## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KYRA MOORE, on behalf of herself | : | |
| and others similarly situated, | : | |
| Plaintiffs | : | C.A. No. 13 - |
| v. | : | |
| | : | |
| RITE AID HDQTRS CORP. d/b/a | : | |
| RITE AID CORPORATION, | : | |
| and | : | |
| LEXISNEXIS SEARCH | : | CLASS ACTION |
| SOLUTIONS, INC., | : | |
| Defendants | : | |

## CLASS ACTION COMPLAINT

### I.     INTRODUCTION

1.      This is a consumer class action under the Fair Credit Reporting Act, 15 U.S.C. §
1681 *et seq.* (FCRA)*,* brought on behalf of applicants for employment with Defendant Rite Aid
Hdqtrs Corp. d/b/a Rite Aid Corporation (Rite Aid).  Plaintiff contends that Rite Aid systematically
violates section 1681b(b)(3) of the FCRA by using a consumer report to make an "adverse"
employment decision without, beforehand, providing the person who is the subject of the report a
copy of the report and a summary of rights under the FCRA a sufficient amount of time to dispute
the report before the adverse action is taken.  Plaintiff also asserts individual claims against
Defendant LexisNexis, as more fully described below.

2.      The FCRA was enacted "to insure that consumer reporting agencies exercise their
grave responsibilities with fairness, impartiality, and a respect for the consumer's right to
privacy," 15 U.S.C. § 1681(a)(4) (emphasis added), by operating "in a manner which is fair and
equitable to the consumer, with regard to the confidentiality, accuracy, relevancy" of the
consumer information they disseminate.  15 U.S.C. § 1681(b).  Congress included in the
statutory scheme a series of due-process-like protections that impose strict procedural rules on

"users of "consumer reports" such as Rite Aid. This action involves Defendant's systematic violation of several of those important rules.

3.      Defendant LexisNexis Search Solutions, Inc. (LexisNexis) classified Plaintiff as a thief within a proprietary database called "ESTEEM," and distributed this damaging information to potential retail-store employers, such as Rite Aid, without complying with the minimal statutory requirements of the FCRA.  ESTEEM classifies individuals as thieves based upon alleged "admission statements" submitted by its subscribing employers.  In response to subsequent ESTEEM "inquiries" submitted by other ESTEEM users regarding pending employment applications, LexisNexis prepares and disseminates standardized ESTEEM theft reports which reference "verified admission statements" as the supposed basis of the report. Because so many of the nation's retailers use ESTEEM, including Defendant Rite Aid, the practical consequence of an inaccurate entry within ESTEEM is to render unlikely employment or promotion within the retail industry—if not to preclude it altogether—for the seven years the alleged theft incident is reported to ESTEEM users.

4.      Plaintiff Kyra Moore was denied employment at Rite Aid based on a standardized background screen conducted by LexisNexis pursuant to an agreement with Rite Aid, which LexisNexis performs on all candidates for hire or promotion by Rite Aid. LexisNexis scored Plaintiff "Non-Competitive" for the job based on the existence of an alleged, signed admission of theft by her in the ESTEEM database, submitted to ESTEEM by CVS Corporation (CVS), a former employer.  In violation of the FCRA, Rite Aid willfully failed to provide Plaintiff with the mandatory "pre-adverse action notice" and a copy of the damaging background report it obtained from LexisNexis, *before* the adverse action occurred, as required by 15 U.S.C. § 1681b(b)(3). Every year, thousands of individuals who have applied to Rite Aid for employment

and have been subjected to LexisNexis background screens such as ESTEEM, have been similarly aggrieved by the same willful violation of 15 U.S.C. § 1681b(b)(3).

5.      In addition to being aggrieved by Rite Aid's class-wide, willful violation of 15 U.S.C. § 1681b(b)(3), Plaintiff was also victimized, individually, by LexisNexis's separate violations of the FCRA with regard to its operation of the ESTEEM system. These violations included the following:

a.    When, after Plaintiff had already lost a job as a result of LexisNexis's scoring of her ESTEEM check as being Ineligible, Plaintiff several times requested a copy of her "admission statement" in order to dispute the accuracy of LexisNexis's records about her, LexisNexis willfully or negligently failed to honor these requests, in violation of 15 U.S.C. § 1681g(a).

b.    The theft report was not accurate—Plaintiff is not a thief and did not "admit" to committing a theft—and this inaccuracy was due to LexisNexis's willful or negligent failure to follow "reasonable procedures to assure maximum possible accuracy," as mandated by 15 U.S.C. § 1681e(b).

c.    After receiving written disputes from the Plaintiff, LexisNexis willfully or negligently failed to conduct the independent "reinvestigation" required by 15 U.S.C. § 1681i.

6.      Plaintiff seeks monetary relief under 15 U.S.C. § 1681n for herself and a class of similarly situated employment applicants to whom Rite Aid failed to provide the "pre-adverse action notice" required by 15 U.S.C. § 1681b(b)(3).  Plaintiff also seeks relief against LexisNexis for herself, individually, under 15 U.S.C. §§ 1681n and 1681o, for the violations of 15 U.S.C. §§ 1681e(b), 1681g and 1681i.

## II.    PARTIES

7.    Plaintiff Kyra Moore is an adult individual residing in Philadelphia, Pennsylvania.

8.    Defendant Rite Aid Hdqtrs Corp. d/b/a Rite Aid Corporation (Rite Aid) is a corporation licensed to do business in the Commonwealth of Pennsylvania and regularly conducts business in the City of Philadelphia.  Defendant Rite Aid is a national chain of drug stores with numerous locations in this District, and a principal place of business at 30 Hunter Lane, Camp Hill, Pennsylvania 17011.

9.    Defendant LexisNexis is a corporation headquartered in Alpharetta, Ga.  Among other things, LexisNexis markets and operates several employment background products, including "ESTEEM."

## III.    JURISDICTION AND VENUE

10.    This Court has jurisdiction over this matter based upon 28 U.S.C. § 1331 and 15 U.S.C. §1681p in that all claims brought arise under the federal Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*. Venue is properly in this District, pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in this District, and because Defendants "reside" in this District as defined in 28 U.S.C. § 1391(c).

## IV.    STATEMENT OF FACTS

### A.    Background:  LexisNexis's Screening Activities, Including ESTEEM

11.    LexisNexis is among the biggest of this nation's employment background screening companies, *i.e.,* those that provide "consumer reports," as defined by 15 U.S.C. § 1681a(d)(1)(B), to prospective employers.

12.    Among several employment screening products owned and marketed by LexisNexis is a product known as "ESTEEM."  According to LexisNexis, ESTEEM is a "Retail Theft Contributory Database" that "helps organizations identify applicants with history of theft

4

or fraud." It is a "membership-based contributory program [which] allows companies to legally share theft and fraud incident information."

13.     The subscribing customer-participants in ESTEEM include some of the nation's largest retail chains, such as CVS and Rite Aid.

14.     Participation in the ESTEEM network is governed by an "ESTEEM Member Service Agreement," executed by the individual corporate customer and LexisNexis.

15.     ESTEEM is operated in accordance with operating standards which are called the "Rules of Participation."

16.     Under the Rules of Participation, and as a contractual *quid pro quo* for being able to initiate an ESTEEM "inquiry" for the purpose of checking on the background of a job applicant, ESTEEM subscribers such as CVS are required to "contribute" new records of theft incidents involving their own employees or customers.

17.     The Rules of Participation define a reportable theft incident as containing the following four characteristics:

- The incident must involve a theft of merchandise, cash or company property, but a termination for non-criminal reasons or as a result of a company loss not strictly related to theft or fraud committed by that consumer should not get reported.

- The individual who is the subject of the report must be at least sixteen (16) years of age at the time of the incident.

- The dollar value of the particular theft must be at least $5.

- Unless the employer has actually referred the incident for criminal prosecution, it must obtain and send to LexisNexis a "signed admission statement."

18.     Despite LexisNexis's representation that employee terminations for non-fraudulent reasons or for violations of policies not strictly related to theft or fraud are not part of the ESTEEM database, LexisNexis has not adopted any Rule of Participation that further defines the kinds of incidents that should be reported, nor has LexisNexis issued adequate and

reasonable guidance or direction to ESTEEM customers, or provided adequate or reasonable training to customers, designed to ensure that terminations for non-fraudulent reasons or for violations of policies not strictly related to theft or fraud are kept out of the ESTEEM database.

19.     When an ESTEEM-participating employer customer "contributes" a new ESTEEM report to LexisNexis, this submission consists of two parts.  The first is a data transmission, composed of several defined fields of information concerning the incident (name, address, birth date and Social Security number of the purported thief; the date and store location of the incident; and the amount of the theft).  The second is an electronic copy of a "signed admission statement" regarding the incident. (LexisNexis refers to the statement as a Voluntary Admission Statement or "VAS" and that term will be used hereafter.)

20.     LexisNexis creates an ESTEEM record in its system for each new incident report contributed by a customer employer.  This record consists of data pertaining to the identity of the consumer subject of the report; data about the specific incident; a classification by LexisNexis of the type of theft described in the VAS; and an electronic image of the VAS.

21.     LexisNexis permits its customers, such as CVS, to submit so-called "admission statements" without providing copies to the employee and without disclosing to the employee that they intend to furnish information about the incident to a nationwide theft database. In fact, LexisNexis knows that many of its customers would prefer not providing copies to employees at the time the "admissions" are procured and not disclosing the intended purpose of those statements, and has made a deliberate decision not to interfere with its customers' discretion in this regard.

22.     At the time LexisNexis receives a newly furnished VAS from a customer, it does not review the VAS for compliance with the Rules of Participation, nor does it even consider whether the VAS appears on its face to be an actual admission of a theft. Rather, any review of

the VAS by LexisNexis occurs, if at all, in the future when another subscribing member submits an "inquiry" regarding the consumer in connection with the consumer's application for employment with the inquiring member.

23.     The first time LexisNexis receives an ESTEEM inquiry regarding an applicant for employment that yields a "match" with an ESTEEM record on file, it conducts a procedure it calls "verifying" the VAS.   This "verification" activity is conducted by a small clerical unit located in Charlotte, North Carolina. The activity consists of comparing three electronic files in its system:  (1) the personal data contained within the "inquiry" received from the customer that is considering   the employment application; (2) the incident data originally provided by the contributing employer and (3) the VAS from the contributing employer supposedly supporting the incident report.

24.      If the clerk conducting the "verification" confirms that the consumer named in the inquiry matches an incident report and that the date and amount of the supposed theft matches a VAS which contains the date and dollar amount listed in the report, she will reclassify the VAS in the ESTEEM system as a "verified" admission statement.

25.     During the relevant time period, the ESTEEM verification clerks were also supposed to confirm that the text of the VAS includes some form of acceptance of responsibility by the consumer for an employer loss, but they did not have the discretion to judge whether the acceptance of responsibility in the VAS consituted an actual admission of theft. As a result, LexisNexis routinely has classified non-theft-related losses resulting, for example, from employee carelessness, inattention or work-rule violations, as thefts.

26.     In "verifying" a VAS, LexisNexis does not require the statement to include the word "admit" or "admission," nor the word "theft."   And, where the statement refers to circumstances that could be interpreted as something other than a theft, LexisNexis does not

require the customer contributing the VAS to ESTEEM to furnish any clarifying information. Instead, LexisNexis will resolve all doubt in favor of the contributing customer and "verify" the VAS.

27.     Some LexisNexis customers, like Rite Aid, use ESTEEM as part of an array of employment screening products, while others, like CVS, only use LexisNexis for ESTEEM inquiries. In either case, however, what the employer customer receives back from LexisNexis in response to the inquiry is a background report that contains either a "No Match" or "No Record" ESTEEM report, or, if there is a match and the ESTEEM incident has been "verified," a background report that summarizes the theft incident in the ESTEEM  database.

28.     ESTEEM background reports covering ESTEEM "matches" are provided in a uniform format that lists the identifying personal information of the consumer "Subject;" the "Theft Location Details", meaning the name of the ESTEEM employer-customer that contributed the original theft report and the particular store location where the VAS was signed; and, the "Theft Incident Details,"  including the date of the incident, the  "type of offense" (using such categories as "Theft of Merchandise" or "Cash Register Fraud") and the dollar amount of the theft.

29.     Each ESTEEM background report which is based on a VAS includes the following statement:   "Admission Status: Verified Admission Statement." However, LexisNexis does not provide a copy of the VAS to the inquiring employer customer when it provides the customer with the background report.

30.     In addition to providing background reports, LexisNexis provides to its employment screening customers an additional service which it calls, alternatively, "scoring" or "adjudication." Under this service LexisNexis will score an applicant as Eligible, Ineligible or "Decisional" (meaning "needs further review"), based on an adjudication "matrix" that the

customer develops with LexisNexis. This service is attractive to LexisNexis's large-chain customers who are constantly hiring and promoting in very large volumes, providing the customer with a remote, outsourced tool to make its employment decisions rapidly and efficiently.

31.     LexisNexis offers its customers the possibility of using its screening service in a "pre-employment" hiring environment, meaning as a preliminary screen of applicants, or in a "post-employment" hiring environment, meaning as the final stage in the hiring/promotion process. In a "post-employment"environment, LexisNexis customers use the service to screen consumers who have already been selected for hire or promotion, subject to the results of the background screen.

32.     Rite Aid uses LexisNexis' screening services in a "post-employment" manner and also uses LexisNexis's scoring service. ESTEEM is one element of a multi-element background screening that LexisNexis performs on the pool of consumers selected by Rite Aid for hire or promotion.

33.     During the relevant time period, Rite Aid arranged and selected a scoring or adjudication "matrix" under which an ESTEEM match will produce a score of "Non-Competitive," Rite Aid's selected term equivalent for "Ineligible." During the relevant time period, if a consumer applicant cleared an ESTEEM search, she could still be scored Non-Competitive if she failed to clear another element of the screening package, such as a criminal records check.

34.     Under the FCRA, a "user" of a consumer report who intends to take an "adverse action" on a job application "based in whole or in part" on information obtained from the consumer report must provide notice of that fact to the consumer-applicant, and must include with the notice a copy of the consumer report and a notice of the consumer's dispute rights under

the FCRA, *before* taking the adverse action.   15 U.S.C. § 1681b(b)(3)(A).   After an adverse action occurs, the consumer employment applicant must receive a second notice, mandated by 15 U.S.C. §1681m.

35.   The reasons for the "pre-adverse action" requirement with regard to employment situations are to alert the job applicant that she is about to be rejected based on the content of a report, and provide her an opportunity to challenge the accuracy or relevancy of the information with the consumer reporting agency or the user before that job prospect is lost.

36.   As an additional service offered to its employment screening customers, LexisNexis will itself send out FCRA Pre-Adverse Action and Adverse Action Notices to consumers on behalf of its inquiring customer. Rite Aid uses this service, as well.

LexisNexis and Rite Aid have designed this arrangement so that the Pre-Adverse Action notice always gets sent *after* LexisNexis has scored the application and *after* LexisNexis has provided Rite Aid with the applicant's background report.

### B.   The Facts Pertaining to Plaintiff Kyra Moore

37.   Plaintiff Kyra Moore is a young woman who, upon graduation from high school in 2006, obtained employment with CVS in Philadelphia.

38.   Ms. Moore began her CVS employment as a cashier and worked her way up to supervisor.

39.   In July 2010, as part of a routine loss prevention investigation of store losses, or "shrinkage," the employees at the CVS store on Chestnut Street in Philadelphia, where Plaintiff was employed, were all interrogated by CVS loss prevention agents about their possible roles in contributing to "shrinkage."

40.   During an aggressive interrogation by the loss-prevention agent, Plaintiff was asked whether she had ever stolen any items from CVS or whether she had taken items and

forgotten to pay for them, to which she honestly answered, "no." She was then asked whether it was possible that she may have left items for future purchase, and, as a result of distraction, forgotten to pay for them. To that question, she agreed that there may have been such occasions where she forgot to complete a purchase and the items were later reshelved or taken by someone else.  She was asked to put a value on losses that could potentially have resulted from such distraction, which she estimated at being around $50-$60, and she was instructed to write and sign a statement to that effect, which she did. The agent did not give her a copy of the statement.

41.     After the interrogation, Plaintiff Moore was sent home and told to await further instructions, and days later, she surmised that she had been terminated.

42.     Pursuant to its ESTEEM Member Service Agreement, CVS submitted information about Plaintiff Moore to Defendant LexisNexis—including a copy of the statement the loss prevention agent procured and had her sign—and LexisNexis, in turn, created a new theft record in the ESTEEM system associated with Ms. Moore's address and social security number.

43.     Plaintiff Moore was never criminally charged with theft nor does she have knowledge of any complaint regarding any theft by her ever being referred to any police authority by her former employer, CVS. In fact, as she now has confirmed from a recently produced criminal background check by LexisNexis, she has a clean criminal record.

44.     Around April, 2011, Plaintiff applied for a job at Rite Aid as a store supervisor. She had a positive interview with a district manager and was told that she would start work as soon as she passed a drug test and a background screen.

45.     Soon after April 25, 2011, Plaintiff received in the mail a form letter ("the Pre-Adverse Action Notice"), dated April 25, 2011, purporting to be from Rite Aid, but actually sent by LexisNexis pursuant to its contract with Rite Aid.  The form letter advised her that Rite Aid

had requested a "criminal background report" from LexisNexis in connection with her application for employment and that the "background report may result in your not being offered the job for which you are applying/the termination of your employment, which is applicable." The form letter also stated "if you wish to dispute the attached report in any way, it is solely your (not Rite Aid) responsibility to contact LexisNexis directly." (A copy of the letter is attached hereto as Exhibit "A.")

46.     The Pre-Adverse Action Notice sent to Ms. Moore included with it a copy of a LexisNexis Background Report which, according the report, had been ordered by Rite Aid on April 22, 2011 and "completed" on April 25, 2011.  According to the report she received a score "Pass" for the Social Security verification, and scores of "Eligible" for the GSA/HHS/OIG screen and the Pennsylvania Office of Inspector General screen, but a score of "Ineligible" under an ESTEEM screen. The over-all score, as a result of the ESTEEM match, was "Non-Competive." (A copy of the Background Report is attached as Exhibit "B.")

47.     The ESTEEM component of the Background Report provided to Rite Aid, and later to Plaintiff, includes the following information for an "ESTEEM Incident" occurring in a CVS store:

> Admission Status:  Verified admission statement
>
> Incident: Internal
>
> Type of Offense:  Theft of Merchandise
>
> Date of Incident:  7/26/2010
>
> Theft Amount:  $60.00.

48.     In accordance with its usual practice, Rite Aid (and LexisNexis on Rite Aid's behalf)  did not provide Ms. Moore a copy of the "admission statement" referenced in the incident report when it provided her a copy of the Background Report.

49.     As a direct result of Rite Aid's use of the Background Report and LexisNexis's scoring of Ms. Moore's employment application through its use of its ESTEEM database, Moore lost the job opportunity at Rite Aid.

50.     After realizing that she had been rejected for employment with Rite Aid based on a false and misleading theft report, Plaintiff Moore sought legal advice.  Her counsel sent two letters to LexisNexis, dated May 23, 2011 and July 28, 2011, disputing the accuracy of the ESTEEM incident report and requesting a copy of the so-called "admission statement" referenced in the report and "any other information in her consumer file."  Copies of the letters are attached as Exhibits "C" and "D."

51.     Eventually, on or around September 15, 2011, LexisNexis finally sent Ms. Moore a copy of the VAS and a "revised" Background Report which still classified her as "Non-Competive" based on the same ESTEEM incident. (A copy of the VAS and the second Background Report are attached, respectively, as Exhibits "E" and "F.")

52.     Plaintiff's counsel, by letter dated October 31, 2011, advised LexisNexis that Plaintif still was disputing the accuracy of the information in the ESTEEM system regarding the CVS incident.  The letter stated:

> Ms. Moore denies the accuracy of the report as she never committed any theft.  A cursory review of the so-called "admission statement" shows that it contains no admission of theft.  She signed the statement based upon the representations of CVS Loss Prevention representatives that her job would be saved only if she did so.  However, nowhere does she admit that she ever stole anything; rather, at most she admits that she may have brought merchandise to the front of the store in order to purchase it, but after attending to customers and work issues, would find that the merchandise was no longer where she had left it.  Whether the merchandise was re-stocked by a coworker or whether someone else walked off with it, she could not say.  She was told by Loss Prevention that this was "shrinkage."  But her actions do not constitute "theft" even under the most broad definition of that term.  As such she does not belong on your database.

(A copy of the October 31, 2011 letter is attached as Exhibit "G.")

53.     Following receipt of that letter, LexisNexis finally agreed to revise Plaintiff's ESTEEM record and remove the CVS incident from its database. Sometime in October, 2013, LexisNexis sent Moore a new version of the Background Report it had sent Rite Aid in April, 2011. In this Report, Plaintiff is scored "Eligible" under the ESTEEM screen and also is scored "Eligible" under various criminal records screens (i.e., screens that were not previously performed because of the Ineligible ESTEEM score). Her overall new score is "Competitive." (Plaintiff has some portions of the revised Background Report, a copy of which is attached as Exhibit "H.")

54.     Plaintiff does not know if this new, corrected Background Report was sent to Rite Aid, but she was not offered a job by Rite Aid.

55.     As a direct result of the actions of Rite Aid and LexisNexis, Plaintiff not only lost a job for which she had been approved, she was effectively denied other job opportunities with any of the hundreds of employers who, like Rite Aid, contract with LexisNexis to conduct ESTEEM searches of job applicants.

56.     Besides the lost income, LexisNexis caused Plaintiff humiliation, anxiety, anguish and other forms of emotional harm and distress over being branded a thief in a national database accessible to hundreds of employers in her field.

## V.     CLASS ACTION ALLEGATIONS

57.     Plaintiff  brings this action on behalf of a class defined  as follows:

All employees or applicants for employment of Defendant Rite Aid residing in the United States (including all territories and other political subdivisions of the United States) who were the subject of a Background Report obtained from LexisNexis that was used by Rite Aid to make an adverse employment decision regarding such employee or applicant for employment, within two years prior to the filing of this action, and for whom Rite Aid failed to provide the employee or applicant a copy of their consumer report or a copy of the FCRA summary of rights at least five business days before it took such adverse action.

58.     **Numerosity. FED. R. CIV. P. 23(a)(1).** The Class members are so numerous that

joinder of all is impractical. Upon information and belief, Rite Aid obtains hundreds if not thousands of consumer reports on employees and applicants for employment each year, and those persons' names and addresses are identifiable through documents maintained by Rite Aid.

59.     **Existence and Predominance of Common Questions of Law and Fact.  FED. R. CIV. P. 23(a)(2).**  Common questions of law and fact exist as to all members of the Class, and predominate over the questions affecting only individual members. The common legal and factual questions include, among others:

a)     Whether Rite Aid failed to provide each employee or applicant for employment a copy of their consumer report at least five business days before it took an adverse action based upon the consumer report;

b)     Whether Rite Aid failed to provide each employee or applicant for employment a copy of their written notice of FCRA rights at least five business days before it took an adverse action based upon the consumer report;

c)     Whether Rite Aid acted willfully in disregard of the rights of employees and applicants in its failure to permit its employees and automated systems to send consumers their full consumer files and a written statement of their FCRA rights.

60.     **Typicality. FED. R. CIV. P. 23(a)(3).**  Plaintiff's claims are typical of the claims of each Class member.  Plaintiff has the same claims for statutory and punitive damages that she seeks for absent class members.

61.     **Adequacy.   FED. R. CIV. P. 23(a)(4).**  Plaintiff is an adequate representative of the Class her interests are aligned with, and are not antagonistic to, the interests of the members of the Class she seeks to represent, she has retained counsel competent and experienced in such litigation, and she intends to prosecute this action vigorously.  Plaintiff and her Counsel will fairly and adequately protect the interests of members of the Class.

62.     **Predominance and Superiority.  FED. R. CIV. P. 23(b)(3).**  Questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy.  The statutory and punitive damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Rite Aid's conduct.  It would be virtually impossible for the members of the Class individually to redress effectively the wrongs done to them.  Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the courts.  Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Rite Aid's conduct.  By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a unified proceeding.

## VI.     CAUSES OF ACTION

### COUNT I
### FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681b(b)(3)
### (CLASS CLAIM v. RITE AID)

63.      Plaintiff realleges and incorporates by reference all preceding allegations.

64.     Plaintiff is a "consumer," as defined by the FCRA, 15 U.S.C. § 1681a(c).

65.     LexisNexis Background Reports are "consumer reports" within the meaning of 15 U.S.C. § 1681a(d).

66.     The FCRA provides that any person "using a consumer report for employment purposes" who intends to take any "adverse action based in whole or in part on the report," must provide the consumer a written description of the consumer's rights under the FCRA, as

prescribed by the Federal Trade Commission, before taking such adverse action. 15 U.S.C. § 1681b(b)(3)(A).

67.    For purposes of this requirement, an "adverse action" includes "any . . . decision . . . that adversely affects any current or prospective employee." 15 U.S.C. § 1681a(k)(1)(B)(ii).

68.    Defendant Rite Aid is a "person" that regularly uses LexisNexis Background Reports for employment purposes.

69.    The FCRA requires Rite Aid, as a user of consumer reports for employment purposes, before taking adverse action based in whole or in part on the report, to provide to the consumer to whom the report relates, a copy of the report and a written description of the consumer's rights under the FCRA.  15 U.S.C. § 1681b(b)(3)(A)(i), (ii).

70.    Rite Aid willfully violated section 1681b(b)(3) of the FCRA by failing to provide Plaintiff and the members of the class the following before using such reports:  (a) the required Pre-Adverse Action Notice, (b) a copy of the consumer report and (c) a written description of the consumer's rights under the FCRA,  and thereby denyied the consumers a sufficient time to be able to review and dispute the report before Rite Aid took adverse action on their employment or promotion applications.

WHEREFORE, Plaintiff Moore and the Class pray for relief as follows:

A.    An order certifying the proposed Class under Rule 23 and appointing Plaintiff and the undersigned counsel of record to represent same;

B.    An award of statutory and punitive damages for Plaintiff and the Class;

C.    An award of pre-judgment and post-judgment interest as provided by law;

D.    An award of attorneys' fees and costs; and,

E.    Such other relief as the Court deems just and proper.

**COUNT II**
**FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681e(b)**
**(PLAINTIFF v. LEXISNEXIS)**

71.    Plaintiff realleges and incorporates by reference all preceding allegations.

72.    Lexis Nexis is a "consumer reporting agency," as defined by FCRA, 15 U.S.C. § 1681a(f).

73.    At all times pertinent hereto, the Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

74.    At all times pertinent hereto, the above-mentioned consumer reports were "consumer reports" as that term is defined by 15 U.S.C. § 1681a(d).

75.    Plaintiff realleges and incorporates all other factual allegations set forth in the Complaint.

76.    LexisNexis violated 15 U.S.C. §1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's consumer reports and the files it published and maintained.

77.    As a result of LexisNexis violations of 15 U.S.C. §1681e(b), Plaintiff suffered actual damages including but not limited to: loss of employment income and benefits, damage to reputation, embarrassment, humiliation and other mental, physical and emotional distress.

78.    The violations by LexisNexis were willful rendering Defendant liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.  In the alternative, LexisNexis was negligent, which entitles Plaintiff to recovery under 15 U.S.C. §1681o.

79.    Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from LexisNexis in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

WHEREFORE, Plaintiff seeks judgment in Plaintiff's favor and damages against Defendant LexisNexis, for the following requested relief:

A.      Actual damages;

B.      Statutory damages;

C.      Punitive damages;

D.      Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681n and 1681o; and

E.      Such other and further relief as may be necessary, just and proper.

### COUNT III
### FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681g(a)
### (PLAINTIFF v. LEXISNEXIS)

80.     Plaintiff realleges and incorporates by this reference all preceding allegations.

81.     LexisNexis, in its capacity as a "consumer reporting agency," is required by the FCRA, 15 U.S.C. § 1681g(a), to furnish to a requesting consumer "all information in the consumer's file at the time of the request."

82.     The information that LexisNexis maintains regarding consumers in its ESTEEM database consists of (a) uniformly submitted electronic fields of information about the supposed theft incident and (b) the written VAS that the ESTEEM member who "contributes" the information represents to be a signed admission about the supposed theft.

83.     Despite having received a request from Plaintiff for a copy of her individual file, LexisNexis willfully failed to provide her with a copy of her signed VAS.

84.     Within the FCRA scheme, one of the mechanisms for policing the accuracy of potentially damaging information being disseminated by consumer reporting agencies is the right to initiate a dispute and reinvestigation of the information pursuant to 15 U.S.C. § 1681i.

85.     The failure of LexisNexis to provide Plaintiff with the actual "admission statement" forming the basis of the ESTEEM theft report is particularly egregious in that, by such failure, LexisNexis systematically undermined the possibility of a meaningful consumer dispute by requiring Plaintiff to dispute the accuracy of an "admission statement" it did not let her see.

86.     Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from LexisNexis in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

WHEREFORE, Plaintiff seeks judgment in Plaintiff's favor and damages against Defendant LexisNexis, for the following requested relief:

A.     Actual damages;

B.     Statutory damages;

C.     Punitive damages;

D.     Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681n and 1681o; and

E.     Such other and further relief as may be necessary, just and proper.

**COUNT IV**
**FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681i(a)(1)**
**(PLAINTIFF v. LEXISNEXIS)**

87.     Plaintiff realleges and incorporates all other factual allegations set forth in the Complaint.

88.     LexisNexis violated 15 U.S.C. §1681i(a)(1) by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and record the current status of the disputed information or delete the item from Plaintiff's consumer file.

89.     As a result of LexisNexis' violations of 15 U.S.C. §1681i(a)(1), Plaintiff suffered actual damages, including but not limited to: loss of employment income and benefits, damage to reputation, embarrassment, humiliation and other emotional and mental distress.

90.     LexisNexis' violations were willful, rendering Defendant liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.   In the alternative, LexisNexis was negligent which entitles Plaintiff to recovery under 15 U.S.C. §1681o.

91.     Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from LexisNexis in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

WHEREFORE, Plaintiff seeks judgment in Plaintiff's favor and damages against Defendant LexisNexis, for the following requested relief:

A.     Actual damages;

B.     Statutory damages;

C.     Punitive damages;

D.     Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681n and 1681o; and

E.     Such other and further relief as may be necessary, just and proper.

**COUNT V**
**FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681i(a)(5)(A)**
**(PLAINTIFF v. LEXISNEXIS)**

92.     Plaintiff realleges and incorporates by this reference all preceding allegations.

93.     Defendant LexisNexis violated 15 U.S.C. §1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate item of information from Plaintiff's consumer file or modify the item of information upon a lawful reinvestigation.

94.     As a result of LexisNexis' violations of 15 U.S.C. §1681i)a)(5)(A), Plaintiff suffered actual damages, including but not limited to: loss of employment, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

95.     LexisNexis' violations were willful, rendering Defendant liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. In the alternative, LexisNexis was negligent, entitling Plaintiff to recover under 15 U.S.C. §1681o.

96.     Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from LexisNexis in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

WHEREFORE, Plaintiff seeks judgment in Plaintiff's favor and damages against Defendant LexisNexis, for the following requested relief:

A.     Actual damages;

B.     Statutory damages;

C.     Punitive damages;

D.     Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681n and 1681o; and

E.      Such other and further relief as may be necessary, just and proper.

**TRIAL BY JURY IS DEMANDED**.

By: *James A./ Francis*
James A. Francis
Mark D. Mailman
David A. Searles
Erin Novak
FRANCIS & MAILMAN, PC
100 S. Broad Street, 19th Floor
Philadelphia, PA 19110
(215) 735-8600


Sharon M. Dietrich
Nadia Hewka
COMMUNITY LEGAL SERVICES, INC.
1424 Chestnut Street
Philadelphia, PA 19102
(215) 981-3700

Irv Ackelsberg
LANGER GROGAN & DIVER, PC
1717 Arch Street, Suite 4130
Philadelphia, PA 19103
(215) 320-5660

Leonard A. Bennett
CONSUMER LITIGATION ASSOCIATES, PC
12515 Warwick Boulevard # 101
Newport News, VA 23606
(757) 930-3660

DATED:  March 22, 2013                Attorneys for Plaintiff