IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **KYRA MOORE, on behalf of herself and others similarly situated,**<br>              Plaintiff, | **CIVIL ACTION** |
| v. | |
| **RITE AID HDQTRS CORP., doing business as "RITE AID CORPORATION,"**<br>              Defendant. | **NO. 13-1515** |

**DuBOIS, J.**                                                                                                              **July 30, 2014**

# M E M O R A N D U M

## I.  INTRODUCTION

This putative class action arises out of defendant Rite Aid Hdqtrs Corp.'s ("Rite Aid") alleged violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, through its use of employment-screening services provided by LexisNexis Screening Solutions, Inc. ("LexisNexis").  The putative class contains all employees or applicants for employment at Rite Aid who were subject to an adverse employment action as a result of background reports obtained from LexisNexis.  Presently before the Court is Rite Aid's Motion to Dismiss, filed pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the reasons that follow, the Court grants Rite Aid's Motion without prejudice to plaintiff's right to file an amended complaint within fifteen (15) days in accordance with this Memorandum if warranted by the facts.

## II. BACKGROUND[1]

### A. Facts Pertaining to Rite Aid Employment Screening and Adjudication

At all times relevant to the instant litigation, Rite Aid contracted with LexisNexis to screen job applicants for new positions, including both current and potential employees. Compl. ¶ 31. LexisNexis provided Rite Aid with three services: (1) conducting background checks on job applicants and employees applying for new positions; (2) assessing each applicant's eligibility for a new position based on the outcome of those background checks, which LexisNexis termed "adjudication"; and (3) delivering form letters, on Rite Aid stationary, designed to satisfy the notice requirements of the FCRA, which are applicable when a person uses background checks for employment purposes. Compl. ¶¶ 30, 36. LexisNexis provided these services as a "remote, outsourced tool" to assist Rite Aid make large numbers of employment decisions. Compl. ¶ 30.

Rite Aid used LexisNexis background checks to, *inter alia*, identify applicants with a history of theft or fraud. LexisNexis provided this service by allowing Rite Aid to search its proprietary Esteem database. Compl. ¶ 12. Employers such as Rite Aid were authorized to search the Esteem database after signing the "Rules of Participation," which contractually required the employers to "contribute" new records of theft involving their own employees. Compl. ¶ 16. The Rules of Participation required that an employer-reported theft meet the following four criteria: (1) the incident involved the theft of merchandise, cash, or company property, but "loss not strictly related to theft or fraud committed by that [employee] should not get reported"; (2) the subject of the report was over sixteen years of age; (3) the dollar value of the theft was greater than five dollars; and (4) the incident was reported for criminal prosecution

---

[1] The facts are taken from the Class Action Complaint ("Complaint") and are presented in the light most favorable to plaintiff.

2

or the subject of the report signed a Voluntary Admission Statement ("VAS"). Compl. ¶¶ 17, 19. If an employer opted to submit a VAS, LexisNexis did not require that the participating employer explain the purpose of the VAS to its employee before requesting that he or she sign the document, nor did LexisNexis require that the reported employee be provided a complete copy of his or her VAS. Compl. ¶ 21.

If LexisNexis conducted a background check and an applicant was matched to an entry in the Esteem database, LexisNexis "verified" the match by confirming that the amount and date of the loss described in the VAS matched the Esteem report. Compl. ¶ 24. Contrary to the Rules of Participation, which proscribed submission of a VAS reporting loss not strictly related to theft or fraud, LexisNexis allegedly verified any VAS that described non-theft-related losses for which the employee took responsibility, such as losses due to carelessness, inattention, or violations of employer policy. Compl. ¶¶ 25, 26.

After conducting background checks on Rite Aid applicants, LexisNexis adjudicated each applicant's qualifications for a given position using a scoring matrix established by Rite Aid. Compl. ¶ 30. LexisNexis sorted Rite Aid applicants into three categories: eligible, non-competitive, and decisional. Compl. ¶¶ 30, 33. If an applicant had a verified match in the Esteem database, LexisNexis scored that applicant non-competitive for a position at Rite Aid. Compl. ¶ 33.

After LexisNexis adjudicated an applicant non-competitive, LexisNexis sent an initial notice letter to the applicant on Rite Aid stationary, stating:

> We have recently requested a criminal background report on you per your authorization. Attached is a copy of your background report, as well as a summary of your rights under the Federal Fair Credit Reporting Act and any additional rights under state laws (if applicable). The background report may result in your not being offered the job for which you are applying/the termination of your employment, whichever is applicable. . . .

3

>If there is any information that you believe we should consider, in light of the attached report, before we make our decision whether to employ/terminate you[,] whichever is applicable, you may contact the hiring manager with whom you have been in contact/your region[al] human resources manager. . . .
>
>If Rite Aid does not hear from you within five (5) business days from the date of your receipt of this letter, then you will not be offered employment/your employment will be terminated, whichever is applicable. If we hear from you within five (5) business days from the date of your receipt of this letter, we will consider whatever information you provide to us in making our final decision whether to employ/terminate you.

Compl. Ex. A.

The LexisNexis employment-screening process was structured so that this notice letter arrived after LexisNexis completed adjudications of Rite Aid applicants. Compl. ¶ 36. LexisNexis attached the background report to the initial notice letter, and the Esteem report described only the location, date, and amount of the reportedly stolen merchandise. Compl. Ex. B. A copy of the VAS was not provided to either the applicant or Rite Aid as part of the background report. Compl. ¶ 29. The Complaint says nothing about the provisions in the initial notice letter that, within five days of receipt of the letter, Rite Aid would consider whatever additional information the applicant believed it should consider in making its final decision.

### B. Facts Pertaining to Plaintiff Kyra Moore

Plaintiff, Kyra Moore, worked for CVS from 2006 to 2010. Compl. ¶¶ 37, 39. In July 2010, CVS loss-prevention agents interviewed all employees working at the store where Ms. Moore was employed. Compl. ¶ 39. During her interview, Ms. Moore denied ever stealing merchandise but admitted that, on a previous occasion, items had gone missing after she placed them on a checkout counter and left them to attend to other customers. Compl. ¶ 40. The loss-prevention agent and Ms. Moore drafted a VAS by hand, in which Ms. Moore admitted only that she intended to pay for the items that were taken from CVS as a result of her leaving them unattended. Compl. Ex. E. The loss-prevention agent did not provide a copy of the VAS to Ms.

4

Moore and reported the incident to LexisNexis for use in its Esteem database.  Compl. ¶¶ 40, 42.  After completing the VAS, Ms. Moore was sent home and terminated.  Compl. ¶ 41.

Around April 2011, Ms. Moore applied for a store-supervisor position at Rite Aid.  Compl. ¶ 43.  During her interview, a Rite Aid district manager told Ms. Moore that she could start work after passing a drug test and background check.  Compl. ¶ 44.  LexisNexis sent Ms. Moore an initial notice letter dated April 25, 2011 on Rite Aid stationary.  Compl. Ex. A.  She received the initial notice letter shortly after April 25, 2011.  Compl. ¶ 45.  The initial notice letter stated that if Ms. Moore responded within five days of receipt of the letter, Rite Aid would "consider whatever information you provide to us in making our final decision whether to employ/terminate you."  Compl. Ex. A.

The background report attached to the initial notice letter stated that Ms. Moore had passed the criminal background check but was scored non-competitive due to a match in the Esteem database.  Compl. ¶ 46.  The background report did not include a copy of the VAS and contained only the following information to describe the theft of which she was accused: (1) "Admission Status: Verified admission statement"; (2) "Incident: Internal"; (3) "Type of Offense: Theft of Merchandise"; (4) "Date of Incident: 7/26/2010"; and (5) "Theft Amount: $60.00."  Compl. ¶¶ 47, 48.  Rite Aid thereafter withdrew the offer of employment to Ms. Moore.  Compl. ¶ 49.

The Complaint says nothing about the five-day period provided in the initial notice letter for submission by the applicant of additional information for use in Rite Aid's decision.  Rather, on this issue plaintiff avers that she retained counsel, who sent two letters to LexisNexis, dated May 23, 2011 and July 28, 2011, disputing the accuracy of the Esteem report.  Compl. ¶ 50.  In October 2013, LexisNexis sent a revised background report to Ms. Moore scoring her eligible for

the position at Rite Aid. Compl. ¶ 53. Ms. Moore does not know whether Rite Aid received the revised report, but she was not offered a position at Rite Aid thereafter. Compl. ¶ 54.

Ms. Moore filed the instant suit against Rite Aid on March 22, 2013. Rite Aid filed its Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on May 31, 2013. A ruling on the Motion was deferred during the time the parties were engaged in settlement discussions in *Goode v. LexisNexis Risk & Information Analytics Group, Inc.*, Civil No. 11-2950, a related case.

## III. LEGAL STANDARD

In analyzing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court "accept[s] all factual allegations as true, [and] construe[s] the complaint in the light most favorable to the plaintiff." *Phillips v. Cnty of Allegheny*, 515 F.3d 224, 231, 233 (3d Cir. 2008) (internal quotation marks omitted). A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible when a plaintiff's allegations show that defendant's liability is more than a sheer possibility. *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

## IV. DISCUSSION

In this putative class action, plaintiff asserts that Rite Aid violated 15 U.S.C. § 1681b(b)(3), which states:

> [I]n using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates —
>
> (i) A copy of the report; and

6

(ii) a description in writing of the rights of the consumer under [the FCRA].

Rite Aid has assumed, for the purposes of this Motion only, that LexisNexis meets the definition of a consumer reporting agency, 15 U.S.C. § 1681a(f), and that LexisNexis background reports are consumer reports, *id.* § 1681a(d). Further, Rite Aid is a person, *id.* § 1681a(b), and plaintiff is a consumer, *id.* § 1681a(c).

The notice required by § 1681b(b)(3) is generally referred to as a pre-adverse action notice, and its "clear purpose" is "to afford employees time to discuss reports with employers or otherwise respond before adverse action is taken." *Goode v. LexisNexis Risk & Info. Analytics Grp., Inc.*, 848 F. Supp. 2d 532, 537 (E.D. Pa. 2012) (DuBois, J.). Plaintiff alleges that Rite Aid failed to provide any pre-adverse action notice or, in the alternative, that Rite Aid failed to provide a complete copy of the report. Further, plaintiff argues that those violations constitute willful non-compliance with the FCRA and, thus, that the putative class is entitled to statutory and punitive damages. The Court addresses each argument in turn.

**A. Failure to Provide Pre-Adverse Action Notice**

As the title makes clear, a pre-adverse action notice must be sent "before taking any adverse action." 15 U.S.C. § 1681b(b)(3). In the employment context, an adverse action is defined as the "denial of employment or any other decision for employment purposes that adversely affects any current or prospective employee."[2] *Id.* § 1681a(k)(1)(B)(ii).

Because a pre-adverse action notice must be sent *before* an adverse action occurs, the controlling question is generally the timing of the adverse action — when did it occur — rather than whether the action was adverse. On the issue of timing, § 1681b(b)(3) permits an employer

---

[2] The LexisNexis adjudications at issue in this case resulted in the failure to employ or promote Rite Aid applicants. Thus, the decisions are well within the confines of the definition of adverse action contained in 15 U.S.C. § 1681a(k)(1)(B)(ii), and the Court need not reach the applicability of the "catch-all" definition of adverse action found in § 1681a(k)(1)(B)(iv).

to form the intent to take an adverse action before the decision actually takes effect. *See Obabueki v. Int'l Bus. Machs. Corp.*, 145 F. Supp. 2d 371, 392 (S.D.N.Y. 2001). For this reason, an internal decision to rescind an offer, standing alone, cannot be considered an adverse action. *See id.* at 391–92; *Johnson v. ADP Screening & Selection Servs., Inc.*, 768 F. Supp. 2d 979, 983 (D. Minn. 2011). "Rather, an adverse action occurs when the decision is carried out, when it is communicated or actually takes effect, and an actor has until that time to take the necessary steps to comply with the FCRA's requirements." *Burghy v. Dayton Racquet Club, Inc.*, 695 F. Supp. 2d 689, 703 (S.D. Ohio 2010); *see also Goode*, 848 F. Supp. 2d at 540.

    The pertinent question in this case is whether LexisNexis adjudications constitute internal decisions made on Rite Aid's behalf or whether Rite Aid relied on LexisNexis adjudications as final employment decisions. Plaintiff argues that LexisNexis adjudications constitute adverse actions and, thus, the initial notice letter sent by LexisNexis arrived after, rather than before, an adverse action already had occurred. Rite Aid makes two arguments in response: (1) plaintiff's allegations are insufficient as a matter of law because the initial notice letter contained provisions that stated Rite Aid would consider, within five days of receipt of the initial notice letter, whatever additional information the applicant believed it should consider in making its final decision; and (2) plaintiff's allegations do not include sufficient facts, taken as true, to plausibly claim that LexisNexis adjudications are adverse actions. The Court rejects Rite Aid's first argument but concludes that the Complaint contains insufficient factual allegations to plausibly state a claim for relief on this ground.

    As to Rite Aid's first argument, it is not dispositive that the initial notice letter contained provisions that stated that Rite Aid would consider whatever additional information the applicant believed it should consider in making its final decision. An employer cannot satisfy

§ 1681b(b)(3) by formally designating some future point in time as the moment of "final decision" if, in fact, that decision already has been made.  In this case, plaintiff argues that Rite Aid's employment decision actually took effect upon the completion of a LexisNexis adjudication and that the opportunity thereafter to provide information was a mere formality designed to satisfy § 1681b(b)(3).  If such an argument was supported by the allegations in the Complaint, and it is not, plaintiff would state a claim upon which relief could be granted on this ground.  Section 1681b(b)(3) requires that an employer provide a "real opportunity" for applicants "to contest the adjudication or change its outcome thereafter."  *Goode*, 848 F. Supp. 2d at 540.  To hold otherwise would allow employers to circumvent entirely the pre-adverse action notice requirement.  Thus, the existence of an initial notice letter with an opportunity to provide additional information does not bar plaintiffs from claiming that the letter was sent after an adverse action already had occurred.

As to Rite Aid's second argument, the Court concludes that the allegations in plaintiff's Complaint are insufficient to plausibly claim that Rite Aid took an adverse action at the time of plaintiff's adjudication by LexisNexis.  Although plaintiff argues in her response to the Motion that LexisNexis adjudications constitute adverse actions, plaintiff does not allege that Rite Aid relied on those adjudications as final employment decisions and that the five-day period provided for in the initial notice letter was not a "real opportunity" for her "to contest the adjudication." *Id.*  The closest the Complaint comes to such an allegation is the statement that "LexisNexis and Rite Aid have designed this arrangement so that the Pre-Adverse Action notice always gets sent *after* LexisNexis has scored the application and *after* LexisNexis has provided Rite Aid with the applicant's background report."  Compl. ¶ 36.  Such an allegation, standing alone, is not

9

sufficient to state a claim upon which relief can be granted on this ground.[3]  Plaintiff fails to allege that Rite Aid treated LexisNexis adjudications in such a way as to make them adverse actions taken by Rite Aid.

Moreover, plaintiff does not aver why she failed to inform Rite Aid that she disputed her LexisNexis background report within the five-day period provided for by the initial notice letter. An employer's response to a dispute, or lack thereof, is an important fact in determining whether a plaintiff can plausibly claim that his or her employer failed to provide a real opportunity to

---

[3] Plaintiff argues that this allegation, the statutory text, and this Court's decision in *Goode v. LexisNexis Risk & Info. Analytics Grp., Inc.*, 848 F. Supp. 2d 532 (E.D. Pa. 2012), are sufficient to state a claim for relief.  In *Goode*, this Court held that LexisNexis, in conducting adjudications on its customer's applicants for employment, operated as a staffing agency and took an adverse action when adjudicating those applicants as ineligible for employment based on the results of LexisNexis background reports.  *Id.* at 538–39.

The *Goode* decision does not support plaintiff's argument in this case for two reasons.  First, only the conduct of LexisNexis, and not its employer–clients, was at issue in *Goode*.  *Id.* at 539 n.7 ("The Complaint does not define the role member employers play once [LexisNexis] adjudicates the employee or potential employee.").  In *Goode*, the Court addressed when an entity, which assists an employer in making its employment decisions, takes an adverse action based on the contents of a consumer report.  *See id.* at 539 ("[A]ny person who takes an adverse action must comply with § 1681b(b)(3), be it a CRA, an employer, or a staffing agency. . . . That is the case even though the party taking the adverse action did not have the ultimate authority to make the hiring decision." (citing *Adams v. Nat'l Eng'g Servs. Corp.*, 620 F. Supp. 2d 319, 332 (D. Conn. 2009))).  As stated in *Goode*, an entity in LexisNexis's position takes an adverse action when making "a decision for employment purposes that adversely affects any current or prospective employee."  *Adams*, 620 F. Supp. 2d at 332 (emphasis removed) (quoting 15 U.S.C. § 1681a(k)(1)(B)(ii)); *see also Goode*, 848 F. Supp. 2d at 538–39.  The Court concluded that the *Goode* Complaint plausibly alleged that LexisNexis adjudications "adversely affect[ed]" applicants for employment with LexisNexis's employer–clients.  848 F. Supp. 2d at 539.  That ruling is not authority for plaintiff's claim, in this case, that Rite Aid treated LexisNexis adjudications in such a way as to make them adverse actions taken by Rite Aid.

Second, the allegations concerning the conduct of the employers were different in *Goode* than in this case.  Rather than inviting applicants to submit "information that you believe [the employer] should consider, in light of the attached report," Compl. Ex. A., the employers in *Goode* "instructed plaintiffs to contact [LexisNexis] . . . to dispute the report."  *Id.* at 540.  Plaintiff Keesha Goode disputed her Esteem report with LexisNexis as instructed, but LexisNexis did not notify her potential employer of the dispute until some time later, "presumably too late for [her] to effectively contest the adjudication with the employer."  *Id.* at 539 n.7.  The second named plaintiff in *Goode*, Victoria Goodman, was fired by her employer before LexisNexis had even sent the initial notice letter.  *Id.*

contest the contents of a consumer report.  In this case, Rite Aid did not have an opportunity to respond because plaintiff chose not to inform Rite Aid of her dispute.  Accordingly, to state a claim for relief, plaintiff must allege facts that prevented her from responding to the initial notice letter.  Nowhere in the Complaint does plaintiff allege that five days was an insufficient amount of time to respond or that the paucity of information in the Esteem report prevented her from making a meaningful response.  Therefore, the Complaint fails to state a claim upon which relief can be granted on this ground.

For the foregoing reasons, that part of Rite Aid's Motion to Dismiss that seeks to dismiss plaintiff's claim that Rite Aid failed to provide a pre-adverse action notice, in violation of 15 U.S.C. § 1681b(b)(3), is granted.  This claim is dismissed without prejudice, and plaintiff is granted leave to file an amended complaint within fifteen (15) days in accordance with this Memorandum if warranted by the facts.

### B. Failure to Provide a Full Copy of Consumer Report

Section 1681b(b)(3) requires that "the person intending to take such adverse action shall provide to the consumer to whom the report relates . . . a copy of the report."  Plaintiff alleges that Rite Aid failed to provide her with a complete copy of the LexisNexis background report because her Esteem report did not include a copy of her VAS.  This argument fails to state a claim upon which relief can be granted because plaintiff alleges that LexisNexis did not provide a copy of her VAS to Rite Aid.  *See* Compl. ¶ 29.

Section 1681b(b)(3) requires that an employer provide only the information given to it by the consumer reporting agency.  *See Goode*, 848 F. Supp. 2d at 545; Fed. Trade Comm'n, *40 Years of Experience with the Fair Credit Reporting Act: An FTC Staff Report with Summary of Interpretations* 53 (2011).  In view of the allegation that LexisNexis did not provide Rite Aid a

copy of the VAS, Rite Aid's Motion to Dismiss is granted with respect to this claim.  This claim is dismissed with prejudice because, under the allegations of the Complaint, granting leave to amend would be futile.

### C. Willful Noncompliance and Damages

Plaintiff alleges that she is entitled to statutory and punitive damages, pursuant to 15 U.S.C. § 1681n, for Rite Aid's allegedly willful violation of the FCRA.  In view of the Court's decision with respect to plaintiff's claim that Rite Aid failed to provide pre-adverse action notice, Rite Aid's Motion to Dismiss is granted as to plaintiff's claims for statutory and punitive damages, and those claims are dismissed without prejudice.  Plaintiff is granted leave to file an amended complaint within fifteen (15) days in accordance with this Memorandum if warranted by the facts.

## V. CONCLUSION

For the foregoing reasons, Rite Aid's Motion to Dismiss is granted.  Plaintiff's claim that Rite Aid failed to provide pre-adverse action notice, in violation of 15 U.S.C. § 1681b(b)(3), and for punitive and statutory damages, pursuant to 15 U.S.C. § 1681n, are dismissed without prejudice.  Plaintiff is granted leave to file an amended complaint with respect to these claims within fifteen (15) days in accordance with this Memorandum if warranted by the facts.  Plaintiff's claim that Rite Aid failed to provide a copy of the VAS in the LexisNexis background report, in violation of § 1681b(b)(3), is dismissed with prejudice.  An appropriate order follows.