**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KYRA MOORE, on behalf of herself** | : | |
| **and others similarly situated,** | : | |
| | : | |
| **Plaintiffs** | : | **C.A. No. 13 – 1515** |
| | : | |
| **v.** | : | **CLASS ACTION** |
| | : | |
| **RITE AID HDQTRS CORP. d/b/a** | : | |
| **RITE AID CORPORATION,** | : | |
| | : | |
| **Defendant.** | : | |

**FIRST AMENDED CLASS ACTION COMPLAINT**

### I.    INTRODUCTION

1.    This is a consumer class action under the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* (FCRA)*,* brought on behalf of applicants for employment with Defendant Rite Aid Hdqtrs Corp. d/b/a Rite Aid Corporation (Rite Aid).  Plaintiff contends that Rite Aid systematically violates section 1681b(b)(3) of the FCRA by using – through its agent - a consumer report to make an "adverse" employment decision without, beforehand, providing the person who is the subject of the report a copy of the report and a summary of rights under the FCRA a sufficient amount of time to dispute the report before the adverse action is taken.  The adverse action decision is rendered before the applicant even learns of any right to make a dispute to the consumer reporting agency. As a consequence of that violation, job applicants are denied the right to view the reports sold about them, and to dispute any inaccuracies in the reports before losing job opportunities based on such reports.

2.    Further, Rite Aid also violated section 1681b(b)(2)(A) of the FCRA by obtaining and using consumer reports for its employment purposes without first (or at all) making "a clear and conspicuous disclosure … in writing to the consumer at any time before the report is procured

or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes[.]"

3.      The FCRA was enacted "to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy," 15 U.S.C. § 1681(a)(4) (emphasis added), by operating "in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy" of the consumer information they disseminate.  15 U.S.C. § 1681(b).  Congress included in the statutory scheme a series of due-process-like protections that impose strict procedural rules on "users of "consumer reports" such as Rite Aid.  This action involves Defendant's systematic violation of several of those important rules.

4.      Plaintiff Kyra Moore was denied employment at Rite Aid based on the results of a standardized and routine background screen that, pursuant to a contract with Rite Aid, a third-party data seller, LexisNexis,[1] performs on all of Rite Aid's prospective candidates for hire or promotion, including those who have been conditionally hired.  Using the consumer files in its various databases, and based entirely on such information, this third-party agent scored Plaintiff ineligible for employment with Rite Aid, and furnished Rite Aid with that score and a copy of the damaging report on which the score was based.

5.      The background screen information that LexisNexis communicated to Rite Aid about the Plaintiff was acknowledged consumer report information that both parties recognized was governed by the FCRA and subject to its requirements.  Both parties viewed and treated the

_____

[1]      In early 2013, LexisNexis Screening Solutions, Inc. was acquired by the parent company of First Advantage LNS Screening Solutions, Inc.  Although the members of the class were all adjudicated by LexisNexis or First Advantage on behalf of Defendant Rite Aid, First Advantage LNS Screening Solutions, Inc., f/k/a LexisNexis Screening Solutions, Inc. is no longer named as a defendant in this case. In order not to make any distinction between the period before and after the 2013 acquisition, this data seller will be referred to herein as "LexisNexis."

information as consumer report information under the FCRA for the permissible purpose of screening prospective or conditionally hired job applicants for hire.

6.      Consistent with Rite Aid's customary practice, the ineligible classification resulted in Plaintiff not being hired by Defendant.  In violation of the FCRA, 15 U.S.C. § 1681b(b)(3), Rite Aid willfully failed to provide Plaintiff with the mandatory "pre-adverse action notice," including a copy of the consumer report it obtained about her*, **before** the adverse classification of Non-Competitive was made.

7.      Every year, thousands of individuals who have applied to Rite Aid for employment have been similarly aggrieved by the same willful violation of 15 U.S.C. § 1681b(b)(3). These individuals lost employment opportunities based on the use of consumer reports the accuracy of which they never had the chance to contest *before* they were classified as ineligible for hire.

8.      Also in violation of the FCRA, upon information and belief, Defendant required Plaintiff to sign a standardized disclosure and application form which, among other things, did not consist "solely of the disclosure that a consumer report may be obtained for employment purposes," as required by 15 U.S.C. § 1681b(b)(2)(A)(i), but rather contained other distracting and extraneous language.

9.       Plaintiff seeks monetary relief under 15 U.S.C. § 1681n for herself and a class of similarly situated employment applicants to whom Rite Aid failed to provide the "pre-adverse action notice" required by 15 U.S.C. § 1681b(b)(3) and whom Rite Aid required to sign the disclosure form that did not consist "solely of the disclosure that a consumer report may be obtained for employment purposes," as required by 15 U.S.C. § 1681b(b)(2)(A)(i).

## II.   JURISDICTION AND VENUE

10.    This Court has jurisdiction over this matter based upon 28 U.S.C. § 1331 and 15 U.S.C. §1681p in that all claims brought arise under the federal Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*. Venue is properly in this District, pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in this District, and because Defendant "resides" in this District as defined in 28 U.S.C. § 1391(c).

## III.   PARTIES

11.    Plaintiff Kyra Moore is an adult individual residing in Philadelphia, Pennsylvania.

12.    Defendant Rite Aid Hdqtrs Corp. d/b/a Rite Aid Corporation (Rite Aid) is a corporation licensed to do business in the Commonwealth of Pennsylvania and regularly conducts business in the City of Philadelphia.  Defendant Rite Aid is a national chain of drug stores with numerous locations in this District, and a principal place of business at 30 Hunter Lane, Camp Hill, Pennsylvania 17011.

## IV.   STATEMENT OF FACTS

### A.   Rite Aid's Use of Consumer Reports

13.    LexisNexis is a "consumer reporting agency" governed by the FCRA.

14.    LexisNexis enters into form contracts ("Agreement of Service") with its employer customers, whereby, for a price, LexisNexis agrees to provide consumer reports for employment purposes within the meaning of section 1681b(b) of the FCRA.

15.    During the relevant period of time, Rite Aid was a customer of LexisNexis and a party to an Agreement of Service.

16.    When LexisNexis furnished or used a consumer report regarding a Rite Aid applicant, that report would contain the search results from multiple databases.  One of the databases searched and used for the Rite Aid reports was LexisNexis' national criminal records

4

database.  In addition, as part of its agreement with Rite Aid, one of the databases LexisNexis used in its reports and to adjudicate Rite Aid job applicants—through approximately April 2013—was its proprietary database known alternatively as "Esteem" or the "Retail Theft Contributory Database."

17.     The data maintained in the Esteem database consisted primarily of purported admissions of theft procured by a former employer and contributed to the Esteem system. This data is separate from criminal records information, which tends to be contained in separate databases maintained by LexisNexis.

18.     Esteem was a membership program previously offered to LexisNexis' customers in the retail industry.  Under this program, LexisNexis would receive contributed employee "admission statements" from one member, such as CVS or Target, link those statements to the identifying information (name, address, social security number) for the employee in its massive data system, and then, in the event that same individual were to be the subject of a future background inquiry from a different employer member of Esteem, would report an Esteem "match" to the inquiring employer.

19.     While LexisNexis was the consumer reporting agency that furnished consumer reports to Rite Aid, it also served in a separate capacity as a vendor hired by Rite Aid to perform the adjudication of employment applicants' eligibility for hire.  As such, LexisNexis was acting on behalf of Rite Aid, as its agent and/or representative.  Rite Aid would only have LexisNexis perform adjudications for those consumers who had already been hired conditionally.

20.     The Defendant's duties under the FCRA are non-delegable, meaning that regardless of the Defendant's reliance on LexisNexis, LexisNexis' failures to perform, if any, in accordance with Defendant's FCRA duties are fully actionable as if they were performed directly by Rite Aid itself.

21.     Rite Aid is a customer of LexisNexis' scoring service, meaning that, pursuant to an Agreement of Service, LexisNexis scores Rite Aid job applicants as falling within one of three categories - eligible, ineligible or decisional - based on the application of an "adjudication matrix" selected by Rite Aid.  In addition, LexisNexis permits customers to choose their own terminology or nomenclature for those three categories (*e.g.*, "Non-Competitive" for "Ineligible for Hire").

22.     For example, on information and belief, during the relevant time period, LexisNexis' criminal record screen is performed in accordance with the Rite Aid "adjudication matrix," which designates the criteria for scoring different possible "hits" within the LexisNexis National Criminal Record File

23.     Rite Aid has used this background screening service by LexisNexis as a way to manage its vast pool of job applicants, filtering out those applicants scored by LexisNexis as "Non-Competitive," this being Rite Aid's chosen nomenclature for "Ineligible for Hire."  Those applicants passing the entire screen were treated by Rite Aid as "Eligible for Hire" and moved to Hire; those failing to pass any screening element were automatically scored and given the status "Ineligible for Hire" (*i.e.*, "Non-Competitive"), removed from consideration for employment and not moved to Hire in the Rite Aid screening process.

24.     According to the agreement between Rite Aid and LexisNexis, an Esteem "hit" would cause the applicant to be classified "Non-Competitive" or "Ineligible for Hire."

25.     During the relevant time period, if a consumer applicant cleared an Esteem search, she could still be scored Non-Competitive if she failed to clear another element of the screening package, such as a criminal records check.

26.     Under the FCRA, a "user" of a consumer report who intends to take an "adverse action" on a job application "based in whole or in part" on information obtained from the

consumer report must provide notice of that fact to the consumer-applicant, and must include with the notice a copy of the consumer report and a notice of the consumer's dispute rights under the FCRA, *before* taking the adverse action.  15 U.S.C. § 1681b(b)(3)(A).  After an adverse action occurs, the consumer employment applicant must receive a second notice, mandated by 15 U.S.C. §1681m.

27.     The reasons for the "pre-adverse action" requirement with regard to employment situations are to alert the job applicant that she is about to be rejected based on the content of a report, and provide her an opportunity to challenge the accuracy or relevancy of the information with the consumer reporting agency or the user before that job prospect is lost.

28.     As an additional service offered to its employment screening customers, LexisNexis would itself send out FCRA Pre-Adverse Action and Adverse Action Notices to consumers on behalf of its inquiring customer.  Rite Aid used this service, as well.  LexisNexis and Rite Aid designed this arrangement so that the Pre-Adverse Action notice always gets sent *after* LexisNexis has scored the application and *after* LexisNexis has provided Rite Aid with the applicant's background report.

29.     During the relevant time period, LexisNexis would send out the Pre-Adverse Action notices automatically upon the system triggering a "Non-Competitive" adjudication, without any input or review from Rite Aid or knowledge of Rite Aid as to its timing.

30.     LexisNexis' adjudication was more than a recommendation.  Rite Aid systematically relied on the near-automated LexisNexis adjudication and scoring as the last step in its employment decision.

31.     As a practical matter, applicants scored as Non-Competitive are automatically removed from consideration for hiring by Rite Aid.

32.     LexisNexis' adjudication, using Rite Aid's hiring criteria, was itself a formal adverse action taken on behalf of and therefore by Rite Aid.

33.      During the relevant time period, LexisNexis sent immediate electronic notice of the adjudication decision to Rite Aid and also triggered the mailing of notification to the consumer.  This notification was programmed to arrive days after the adjudication has already occurred and Rite Aid had been notified.

34.     While LexisNexis thereafter also mailed a follow up "Adverse Action Notice," that notice, like the Pre-Adverse Action Notice, is a sham.  Contrary to the purposes of the statute, ***both*** notices were improperly sent ***after*** the adverse action.

35.     According to Rite Aid's custom and practice, an applicant classified "Non-Competitive" is, in fact, rejected for employment. Any delay between a "Non-Competitive" adjudication and a final denial decision is a mere formality.

36.     In the exceedingly rare circumstance when a "Non-Competitive" applicant is able to persuade Rite Aid to reconsider its decision, such reconsideration would be a condition subsequent which would change the earlier outcome.  It would not erase the fact that an "adverse action" had already occurred.

37.     On information and belief, Rite Aid (through its agent LexisNexis) sends the consumer an "Adverse Action Notice" five days after sending the "Pre-Adverse Action Notice." Given the delay in time caused by mailing, this gives the consumer at best approximately only two or three days to initiate a dispute, which dispute would be futile in any event because the adverse action had already occurred before the first notice had been mailed.

38.     Uniformly, five days is insufficient for consumers to receive a consumer report by mail, which itself will take two to three business days, read and understand it and then provide a

substantive dispute of same.  At best, the practical period is only one to two days at most, assuming prompt delivery.

39.     The FCRA permits LexisNexis as long as 30 days in all instances and 45 days in many to conduct a dispute of a consumer regarding one of its consumer reports.  15 U.S.C. § 1681i.  Thus, there was no obligation by LexisNexis to investigate any consumer dispute in a shorter time frame.

40.     Under the FCRA, disputes are handled by the consumer reporting agency.  There is no obligation under the FCRA for Rite Aid to receive, process or even accept disputes regarding the consumer reports upon which its adverse actions are based.

41.     Further, upon information and belief, Plaintiff alleges that the "Adverse Action" letter LexisNexis sends for Rite Aid is actually generated and printed at or close to the same time LexisNexis also prints and mails its "Pre Adverse Action" letter.  This task – actually making a dispute of a LexisNexis/Rite Aid report in this narrow window is then made functionally impossible by the Defendant's failure to cause the delivery to the applicant of the full report used on Rite Aid's behalf by LexisNexis.

**B.      Rite Aid's Employment Application Disclosures**

42.     The FCRA imposes substantial limits on when and how a person – including Rite Aid – may use a consumer report for the purpose of hiring, promoting or firing employees.

43.     Initially, a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless –

> (i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, *in a document that consists solely of the disclosure*, that a consumer report may be obtained for employment purposes; and
>
> (ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

15 U.S.C. § 1681b(b)(2)(A) (i) and (ii). (Emphasis added).

44.     Section 1681b(b)(2)(A) therefore imposes the duty on Rite Aid to provide a "clear and conspicuous" disclosure to prospective or current employees that a consumer report about them will be procured.   These disclosures, the statute mandates, must be "stand-alone," *i.e.*, unaccompanied by any other information.

45.     The legislative policy underlying the stand-alone disclosure requirement was articulated in a 1998 opinion letter from the Federal Trade Commission interpreting section 1681b(b)(2) and stating that the FCRA prohibits disclosure forms "encumbered by any other information ... [in order] to prevent consumers from being distracted by other information side-by-side with the disclosure."   Letter from Clarke W. Brinckerhoff, Fed. Trade Comm' n, to H. Roman Leathers, Manier & Herod (Sept. 9, 1998).  *See also Reardon v. Closetmaid Corporation*, 2013 WL 6231606, *10-11 (W.D. Pa. Dec. 2, 2013) (finding disclosure with liability waiver to be "facially contrary to the statute at hand, and all of the administrative guidance").

46.     Section 1681b(b)(2)(A) thus prohibits Rite Aid from including other language as part of the disclosure, such as, but not limited to, release language and waivers.

47.     During the time relevant to this action, Defendant used standardized forms by which new applicants applied for employment at Rite Aid.

48.     During the time relevant to this action, as part of Rite Aid's application process, applicants were required to complete standard form documents to include identifying information, employment history and a statement regarding previous criminal history.  However, upon information and belief, Rite Aid's standard application process did not make the required FCRA disclosures in a document that consisted solely of the disclosure.  *See* 15 U.S.C. § 1681b(b)(2)(A).

49.    During the relevant period, Rite Aid used form disclosures that were not stand-alone when obtaining consent from consumers to order background checks. Some of the forms that Rite Aid has used to obtain consent from consumers to order a background check have included releases of liability and waiver language not permitted by the FCRA.

50.    During the period relevant to this action, Rite Aid did not make the disclosures required by section 1681b(b)(2)(A) of the FCRA using a form that consisted solely of those disclosures.

51.    Nevertheless, Rite Aid systematically obtained and used employment-purpose consumer reports from LexisNexis regarding its employment applicants and probationary employees.

**C.    The Facts Pertaining to Plaintiff Kyra Moore**

52.    Plaintiff Kyra Moore is a young woman who, upon graduation from high school in 2006, obtained employment with CVS in Philadelphia.

53.    Ms. Moore began her CVS employment as a cashier and worked her way up to supervisor.

54.    In July 2010, as part of a routine loss prevention investigation of store losses, or "shrinkage," the employees at the CVS store on Chestnut Street in Philadelphia, where Plaintiff was employed, were all interrogated by CVS loss prevention agents about their possible roles in contributing to "shrinkage."

55.    During the course of an aggressive interrogation, the CVS loss prevention agent had Plaintiff sign a statement and he sent her home.

56.    Plaintiff Moore was never criminally charged with theft nor does she have knowledge of any complaint regarding any theft by her ever being referred to any police

authority by her former employer, CVS. In fact, as she confirmed from a recently produced criminal background check by LexisNexis, she has a clean criminal record.

57.     Around April, 2011, Plaintiff applied for a job at Rite Aid as a store supervisor. She had a positive interview with a district manager and was told that she would start work as soon as she passed a drug test and a background screen.

58.     As part of the application process, upon information and belief, Plaintiff was required to sign authorization and disclosure forms provided by Rite Aid that were not stand-alone and did not satisfy the FCRA's stand-alone disclosure requirement under section 1681b(b)(2)(A).

59.     Soon after April 25, 2011, Plaintiff received in the mail a form letter (the "Pre-Adverse Action Notice"), dated April 25, 2011, purporting to be from Rite Aid, but actually sent by LexisNexis pursuant to its contract with Rite Aid.  The form letter advised her that Rite Aid had requested a "criminal background report" from LexisNexis in connection with her application for employment and that the "background report may result in your not being offered the job for which you are applying/the termination of your employment, which is applicable." The form letter also stated "if you wish to dispute the attached report in any way, it is solely your (not Rite Aid) responsibility to contact LexisNexis directly." A copy of the letter is attached hereto as Exhibit A.

60.     The Pre-Adverse Action Notice sent to Ms. Moore included with it a copy of a LexisNexis Background Report which, according to the Report had been ordered by Rite Aid on April 22, 2011 and "Record Judged" and "completed" on April 25, 2011.  According to the Report, she received a score of "Pass" for the Social Security verification, and scores of "Eligible" for the GSA/HHS/OIG screen and the Pennsylvania Office of Inspector General screen, but a score of "Ineligible" under an Esteem screen. The over-all score, as a result of the

Esteem match, was "Non-Competitive." A copy of the Background Report is attached as Exhibit B.

61.     The Esteem component of the Background Report provided to Rite Aid, and later to Plaintiff, includes the following information for an "Esteem Incident" occurring in a CVS store:

> Admission Status:  Verified admission statement
>
> Incident: Internal
>
> Type of Offense:  Theft of Merchandise
>
> Date of Incident:  7/26/2010
>
> Theft Amount:  $60.00.

62.     Plaintiff was rejected for employment by Rite Aid solely as a result of her being classified "Non-Competitive" by Rite Aid's agent LexisNexis.  Thus, at the time Plaintiff was furnished the purported "pre-adverse" action notice and a copy of the Background Report, an adverse action had already occurred.

63.     As a direct result of Rite Aid's use of the Background Report and LexisNexis's scoring of Ms. Moore's employment application through its use of its Esteem database, Moore lost the job opportunity at Rite Aid.

64.     As a result of a successful dispute Plaintiff initiated, LexisNexis eventually removed her from the Esteem database.

65.     Because of the timing of the sham "pre-adverse action" notification, Plaintiff was denied the right to have her dispute decided before she lost the job opportunity at Rite Aid.

## V.     CLASS ACTION ALLEGATIONS

66.     Plaintiff  brings this action on behalf of a class defined  as follows:

All employees or applicants for employment of Defendant Rite Aid residing in the United States (including all territories and other political subdivisions of the United States) who were the subject of a Background Report obtained from LexisNexis that classified them as "Non-Competitive" regarding an application for employment or promotion with Rite Aid, within two years prior to the filing of this action, and for whom Rite Aid failed to provide the employee or applicant a copy of their consumer report or a copy of the FCRA summary of rights at least five business days before such classification occurred.

67.     **Numerosity.  FED. R. CIV. P. 23(a)(1).**  The Class members are so numerous that joinder of all is impractical. Upon information and belief, Rite Aid obtains hundreds if not thousands of consumer reports on employees and applicants for employment each year, and those persons' names and addresses are identifiable through documents maintained by Rite Aid.

68.     **Existence and Predominance of Common Questions of Law and Fact.  FED. R. CIV. P. 23(a)(2).**  Common questions of law and fact exist as to all members of the Class, and predominate over the questions affecting only individual members. The common legal and factual questions include, among others:

a)      Whether Rite Aid was obligated to provide all of the information used by LexisNexis to adjudicate Rite Aid applicants for hire even if the report was not formally delivered to Rite Aid;

b)      Whether Rite Aid failed to provide each employee or applicant for employment a copy of their consumer report at least five business days before it took an adverse action based upon the consumer report;

c)      Whether Rite Aid failed to provide each employee or applicant for employment a copy of their written notice of FCRA rights at least five business days before it took an adverse action based upon the consumer report;

d)      Whether Rite Aid acted willfully in disregard of the rights of employees and applicants in its failure to permit its employees and automated systems to send consumers

their full consumer files and a written statement of their FCRA rights;

       e)      Whether the authorization and disclosure forms provided by Rite Aid to consumers constituted the stand-alone disclosure required by 15 U.S.C. § 1681b(b)(2)(A);

       f)      Whether Rite Aid failed to lawfully obtain Class members' written authorization to obtain a consumer report;

       g)      Whether Rite Aid acted willfully in disregard of the rights of employees and applicants in its failure to make the disclosures in the manner required by 15 U.S.C. § 1681b(b)(2)(A).

69.    **Typicality. FED. R. CIV. P. 23(a)(3)**.  Plaintiff's claims are typical of the claims of each Class member.  Plaintiff has the same claims for statutory and punitive damages that she seeks for absent class members.   Her claim is based on the same set of facts – the same procedures – used for all Class members.

70.    **Adequacy.   FED. R. CIV. P. 23(a)(4).**  Plaintiff is an adequate representative of the Class because her interests are aligned with, and are not antagonistic to, the interests of the members of the Class she seeks to represent, she has retained counsel competent and experienced in such litigation, and she intends to continue her vigorous prosecution of this action.  Plaintiff and her Counsel will continue to fairly and adequately protect the interests of members of the Class.

71.    **Predominance and Superiority.  FED. R. CIV. P. 23(b)(3).**  Questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy.  The statutory and punitive damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Rite Aid's conduct.  It would be virtually impossible for the

members of the Class individually to redress effectively the wrongs done to them.  Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the courts.  Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Rite Aid's conduct.  By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a unified proceeding.

## VI.    CAUSES OF ACTION

### COUNT I
### FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681b(b)(3)
### (CLASS CLAIM)

72.    Plaintiff realleges and incorporates by reference all preceding allegations.

73.    Plaintiff is a "consumer," as defined by the FCRA, 15 U.S.C. § 1681a(c).

74.    LexisNexis Background Reports are "consumer reports" within the meaning of 15 U.S.C. § 1681a(d).

75.    The FCRA provides that any person "using a consumer report for employment purposes" who intends to take any "adverse action based in whole or in part on the report," must provide the consumer a written description of the consumer's rights under the FCRA, as prescribed by the Federal Trade Commission, before taking such adverse action. 15 U.S.C. § 1681b(b)(3)(A).

76.    For purposes of this requirement, an "adverse action" includes "any . . . decision . . . that adversely affects any current or prospective employee." 15 U.S.C. § 1681a(k)(1)(B)(ii).

77.    Defendant Rite Aid is a "person" that regularly uses LexisNexis Background Reports for employment purposes.

78.     The FCRA requires Rite Aid, as a user of consumer reports for employment purposes, before taking adverse action based in whole or in part on the report, to provide to the consumer to whom the report relates, a copy of the report and a written description of the consumer's rights under the FCRA.  15 U.S.C. § 1681b(b)(3)(A)(i), (ii).

79.     Rite Aid willfully violated section 1681b(b)(3) of the FCRA by failing to provide Plaintiff and the members of the Class the following before using such reports:  (a) the required Pre-Adverse Action Notice, (b) a copy of the consumer report, and (c) a written description of the consumer's rights under the FCRA, and thereby denied the consumers a sufficient time to be able to review and dispute the report before Rite Aid took adverse action on their employment or promotion applications.

80.     Rite Aid had substantial guidance from previous court decisions, the plain language of the statute and statements from regulatory agencies by which to know that its conduct did not comply with the FCRA.

WHEREFORE, Plaintiff Moore and the Class pray for relief as follows:

A.     An order certifying the proposed Class under Rule 23 and appointing Plaintiff and the undersigned counsel of record to represent same;

B.     An award of statutory and punitive damages for Plaintiff and the Class;

C.     An award of pre-judgment and post-judgment interest as provided by law;

D.     An award of attorneys' fees and costs; and,

E.     Such other relief as the Court deems just and proper.

**COUNT II**
**FAIR CREDIT REPORTING ACT, 15 U.S.C. § 1681b(b)(2)(A)**
**(CLASS CLAIM)**

81.     Plaintiff realleges and incorporates by reference all preceding allegations.

82.     Plaintiff is a "consumer," as defined by the FCRA, 15 U.S.C. § 1681a(c).

83.     LexisNexis Background Reports are "consumer reports" within the meaning of 15 U.S.C. § 1681a(d).

84.     The FCRA prohibits any person from obtaining and using consumer reports for its employment purposes without first (or at all) making "a clear and conspicuous disclosure … in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes[.]" 15 U.S.C. § 1681b(b)(2)(A).

85.     Defendant Rite Aid is a "person" that regularly uses LexisNexis Background Reports for employment purposes.

86.     Defendant obtained and used, both through LexisNexis and independently, a consumer report regarding the Plaintiff and members of the Class.

87.     Rite Aid willfully violated section 1681b(b)(2)(A) of the FCRA by failing to provide Plaintiff and the members of the Class the disclosures required therein.

88.     Rite Aid had substantial guidance from previous court decisions, the plain language of the statute and statements from regulatory agencies by which to know that its conduct did not comply with the FCRA.

WHEREFORE, Plaintiff Moore and the Class pray for relief as follows:

A.     An order certifying the proposed Class under Rule 23 and appointing Plaintiff and the undersigned counsel of record to represent same;

B.     An award of statutory and punitive damages for Plaintiff and the Class;

C.     An award of pre-judgment and post-judgment interest as provided by law;

D.     An award of attorneys' fees and costs; and

E.     Such other relief as the Court deems just and proper.

**TRIAL BY JURY IS DEMANDED**.

By: *James A./ Francis*
James A. Francis
Mark D. Mailman
David A. Searles
Erin Novak
FRANCIS & MAILMAN, PC
100 S. Broad Street, 19th Floor
Philadelphia, PA 19110
(215) 735-8600

Sharon M. Dietrich
Nadia Hewka
COMMUNITY LEGAL SERVICES, INC.
1424 Chestnut Street
Philadelphia, PA 19102
(215) 981-3700

Irv Ackelsberg
LANGER GROGAN & DIVER, PC
1717 Arch Street, Suite 4130
Philadelphia, PA 19103
(215) 320-5660

Leonard A. Bennett
CONSUMER LITIGATION ASSOCIATES, PC
12515 Warwick Boulevard # 101
Newport News, VA 23606
(757) 930-3660

DATED:  August 21, 2014                    Attorneys for Plaintiff

# EXHIBIT A

RITE AID GROUP 30061
30 HUNTER LANE
CAMP HILL, PA  17011



04/25/2011

MOORE, KYRA
2101 N COLLEGE AVE APT C2
PHILADELPHIA PA  19121-4836

Dear KYRA MOORE

This letter is a letter that is sent to both applicants and associates.  If you are an applicant, the issue is whether you will be denied employment.  If you are an associate, the issue is whether your employment will be terminated.  The contact person referenced below if you are an applicant is the hiring manager with whom you have been in contact.  The contact person referenced below if you are an associate is your region human resources manager.

We have recently requested a criminal background report on you per your authorization.  Attached is a copy of your background report, as well as a summary of your rights under the Federal Fair Credit Reporting Act and any additional rights under state laws (if applicable).The background report may result in your not being offered the job for which you are applying/the termination of your employment, whichever is applicable.  The background report was prepared by: LexisNexis Screening Solutions Inc. PO Box 105108 Atlanta, GA 30348 1- (800) 845-6004.  If any information on the attached report is inaccurate or incomplete, you have the right to dispute the information directly with LexisNexis Consumer Dispute line at (800) 845–6004.

If there is any information that you believe we should consider, in light of the attached report, before we make our decision whether to employ/terminate you whichever is applicable, you may contact the hiring manager with whom you have been in contact/your region human resources manager.  If you are an applicant, the hiring manager will give you contact information for the human resources manager, with whom you may share applicable information.  If you have any questions about whom your hiring manager is and/or how to reach him or her, please call: 717-761-2633, extension 2630 or email: WHOISMYHRM@RiteAid.com.  If you have any questions about whom your human resources manager is and/or how to reach him or her, please call: 717-761-2633, extension 2630 or email: WHOISMYHRM@RiteAid.com.

If Rite Aid does not hear from you within five (5) business days from the date of your receipt of this letter, then you will not be offered employment/your employment will be terminated, whichever is applicable.  If we hear from you within five (5) business days from the date of your receipt of this letter, we will consider whatever information you provide to us in making our final decision whether to employ/terminate you.  So that there is no confusion, if you wish to dispute the attached report in any way, it is solely your (not Rite Aid) responsibility to contact LexisNexis directly.

Included with the copy of your background report are additional state specific summary of rights notices.

NEW YORK CORRECTION LAW
ARTICLE 23-A
LICENSURE AND EMPLOYMENT OF PERSONS
PREVIOUSLY CONVICTED OF ONE OR MORE CRIMINAL OFFENSES

SS 750. Definitions. For the purposes of this article, the following terms
shall have the following meanings:
(1) "Public agency" means the state or any local subdivision thereof,
    or any state or local department, agency, board or commission.
(2) "Private employer" means any person, company, corporation, labor
    organization or association which employs ten or more persons.
(3) "Direct relationship" means that the nature of criminal conduct for
    which the person was convicted has a direct bearing on his fitness
    or ability to perform one or more of the duties or responsibilities
    necessarily related to the license, opportunity, or job in question.
(4) "License" means any certificate, license, permit or grant of
    permission required by the laws of this state, its political
    subdivisions or instrumentalities as a condition for the lawful
    practice of any occupation, employment, trade, vocation, business,
    or profession. Provided, however, that "license" shall not, for the
    purposes of this article, include any license or permit to own, possess,
    carry, or fire any explosive, pistol, handgun, rifle, shotgun, or other
    firearm.
(5) "Employment" means any occupation, vocation or employment, or any form
    of vocational or educational training. Provided, however, that
    "employment" shall not, for the purposes of this article, include
    membership in any law enforcement agency.

SS 751. Applicability. The provisions of this article shall apply to any
application by any person for a license or employment at any public
or private employer, who has previously been convicted of one or more
criminal offenses in this state or in any other jurisdiction, and to any
license or employment held by any person whose conviction of one or more
criminal offenses in this state or in any other jurisdiction preceded such

employment, and no employment or license held by an individual, to which the provisions of this article are applicable, shall be denied or acted upon adversely by reason of the individual's having been previously

convicted of one or more criminal offenses, or by reason of a finding of lack of "good moral character" when such finding is based upon the fact that the individual has previously been convicted of one or more criminal offenses, unless:

(1) there is a direct relationship between one or more of the previous criminal offenses and the specific license or employment sought or held by the individual; or

(2) the issuance or continuation of the license or the granting or continuation of the employment would involve an unreasonable risk to property or to the safety or welfare of specific individuals or the general public.

SS 753. Factors to be considered concerning a previous criminal conviction; presumption.

1. In making a determination pursuant to section seven hundred fifty-two of this chapter, the public agency or private employer shall consider the following factors:

   (a) The public policy of this state, as expressed in this act, to encourage the licensure and employment of persons previously convicted of one or more criminal offenses.

   (b) The specific duties and responsibilities necessarily related to the license or employment sought or held by the person.

   (c) The bearing, if any, the criminal offense or offenses for which the person was previously convicted will have on his fitness or ability to perform one or more such duties or responsibilities.

   (d) The time which has elapsed since the occurrence of the criminal offense or offenses.

   (e) The age of the person at the time of occurrence of the criminal offense or offenses.

   (f) The seriousness of the offense or offenses.

   (g) Any information produced by the person, or produced on his behalf, in regard to his rehabilitation and good conduct.

   (h) The legitimate interest of the public agency or private employer in protecting property, and the safety and welfare of specific individuals or the general public.

2. In making a determination pursuant to section seven hundred fifty-two

a request, a written statement setting forth the reasons for such denial.

SS 755. Enforcement.
1. In relation to actions by public agencies, the provisions of this
   article shall  be enforceable by a proceeding brought pursuant to
   article seventy-eight of the civil practice law and rules.
2. In relation to actions by private employers, the provisions of
   this article shall be enforceable by the division of human rights
   pursuant to the powers and procedures set forth in article fifteen
   of the executive law, and, concurrently, by the New York city
   commission on human rights.

Sincerely, RITE AID

# EXHIBIT B



# LexisNexis®

# **Background Report**

# **-Confidential-**

**KYRA MOORE**
**179-70-XXXX**
**CID - 22141449**

RITE AID GROUP 30061
11750 BUSTLETON AVENUE
PHILADELPHIA, PA 19116-2516

**Caution to Customer:** Under the terms of our service agreement, this report is submitted with the understanding that it is to be held in strict confidence and to be used Only for the purpose indicated in the Customer's agreement for service, i.e. to determine eligibility for Employment / Volunteer / Government benefits / etc. If the Client Representative intends to take adverse action based in whole or in part on the contents of this report, the Customer Representative must provide the consumer with a copy of the report and a summary of consumer rights as prescribed by FCRA section 1681g(c)(3). LexisNexis Risk Solutions has provided your company with copies of the consumer rights statements for this purpose. In addition, remember the pre- and post-notification requirements and Consumer authorization prescribed by FCRA section 1681b and section 1681m.

If you are a LexisNexis Consumer

Please contact the LexisNexis Consumer Center at:
**1-800-845-6004** Toll Free (within the U.S.)
**+1 678-694-2530** Toll Number (outside the U.S.)

LexisNexis Customers

Please contact the CHARLOTTE EMPLOYMENT SERVICE CENTER at:
**866-221-6684**



**General Consumer Information**

|  |  |
|---|---|
| **Consumer's Name** KYRA MOORE | **Region/Group** 30061 |
| **Client Name** RITE AID GROUP 30061 | **5 DIGIT STORE NUMBER** 03227 |

**The following consumer information was used in the production of this report:**
Last Name, First Name, Middle Name, SSN, Date of Birth, Address

**SSN** 179-70-XXXX

**Address** 2101 N COLLEGE AVE APT C2
PHILADELPHIA, PA 19121

**Date of Birth** 05/27/XXXX

**Other Names**
Not Provided

**Information Regarding this Order:**

**Position Applied for** 45 - UN SHIFT SUPERVISOR

**Date Ordered** Apr 22, 2011 11:17:54 AM

**Background Check Completion Date** Apr 25, 2011 01:46:19 PM

**Report Last Updated on** Apr 25, 2011 01:46:19 PM

**Date Report Printed** Apr 25, 2011 01:47:03 PM

All timestamps represent Eastern Time

Case Number  0

Date Ordered  Apr 22, 2011

Treatment 3

Specialty

**Remark**

NO RECORD FOUND.

**Order Process History**

| Date | Description |
|------|-------------|
| 04/22/2011 11:17:55 AM | Progressive Order Hold. |
| 04/22/2011 11:18:26 AM | Search In Progress. |
| 04/22/2011 11:18:45 AM | Search In Progress. |
| 04/22/2011 11:38:20 AM | Record Judged. |

**National Sex Offender Registry Search - Department Of Justice Web Site PHILADELPHIA, PHILADELPHIA, PA**        Status:  Disabled

| Record Source | None |
|---------------|------|
| Search Results | Processing |
| Type of Search | National Sex Offender Registry Search - Department Of Justice Web Site |
| Address Covered | 1415A N 23RD ST |
| Address City Covered | PHILADELPHIA |
| Address County Covered | PHILADELPHIA |
| Address State Covered | PA |

**Order Process History**

| Date | Description |
|------|-------------|
| 04/22/2011 11:18:24 AM | Progressive Order Hold. |
| 04/25/2011 01:46:19 PM | Record Disabled. |

**National Sex Offender Registry Search - Department Of Justice Web Site PHILADELPHIA, PHILADELPHIA, PA**        Status:  Disabled

| Record Source | None |
|---------------|------|
| Search Results | Processing |
| Type of Search | National Sex Offender Registry Search - Department Of Justice Web Site |
| Address Covered | 1746 N 16TH ST |
| Address City Covered | PHILADELPHIA |
| Address County Covered | PHILADELPHIA |
| Address State Covered | PA |

**Order Process History**

| Date | Description |
|------|-------------|
| 04/22/2011 11:18:24 AM | Progressive Order Hold. |
| 04/25/2011 01:46:19 PM | Record Disabled. |

**National Sex Offender Registry Search - Department Of Justice Web Site PHILADELPHIA, PHILADELPHIA, PA**        Status:  Disabled

| Record Source | None |
|---------------|------|
| Search Results | Processing |
| Type of Search | National Sex Offender Registry Search - Department Of Justice Web Site |
| Address Covered | FIRST FLR |
| Address City Covered | PHILADELPHIA |

| Address County Covered | PHILADELPHIA |
|---|---|
| Address State Covered | PA |

**Order Process History**

| Date | Description |
|---|---|
| 04/22/2011 11:18:24 AM | Progressive Order Hold |
| 04/25/2011 01:46:19 PM | Record Disabled. |

---

**National Sex Offender Registry Search - Department Of Justice Web Site PHILADELPHIA, PHILADELPHIA, PA**     **Status: Disabled**

| Record Source | None |
|---|---|
| Search Results | Processing |
| Type of Search | National Sex Offender Registry Search – Department Of Justice Web Site |
| Address Covered | 2101 N COLLEGE AVE APT C2 |
| Address City Covered | PHILADELPHIA |
| Address County Covered | PHILADELPHIA |
| Address State Covered | PA |
| Address Zip | 19121 |

**Order Process History**

| Date | Description |
|---|---|
| 04/22/2011 11:17:55 AM | Progressive Order Hold. |
| 04/25/2011 01:46:19 PM | Record Disabled. |

---

**National Sex Offender Registry Search - Department Of Justice Web Site PHILADELPHIA, PHILADELPHIA, PA**     **Status: Disabled**

| Record Source | None |
|---|---|
| Search Results | Processing |
| Type of Search | National Sex Offender Registry Search – Department Of Justice Web Site |
| Address Covered | 1415 N 23RD ST |
| Address City Covered | PHILADELPHIA |
| Address County Covered | PHILADELPHIA |
| Address State Covered | PA |

**Order Process History**

| Date | Description |
|---|---|
| 04/22/2011 11:18:24 AM | Progressive Order Hold. |
| 04/25/2011 01:46:19 PM | Record Disabled. |

---

**State Office Of Inspector General - Pennsylvania**     **Status: Complete**    **Score: Eligible**

| Record Source | OFFICE OF INSPECTOR GENERAL-PENNSYLVANIA |
|---|---|
| Search Results | No Record Found |
| Search Type | STATE OFFICE OF INSPECTOR GENERAL SANCTIONS-PENNSYLVANIA Search |
| Type of Search | State Office Of Inspector General - Pennsylvania |
| Date of Search | 04/25/2011 |
| Search Period | 04/08/2004 - 04/08/2011 |

**Background Report Summary**

**Score Result** NON-COMPETITIVE

**Package Name: ASP USE ONLY; NOT WEB SITE SUBMISSIONS - STD BKG PKG/PA OIG/CC**

| Package Searches Ordered | Status | Discrepancy | Score |
|---|---|---|---|
| Social Security Verification | Complete | No | |
| Social Security Verification | Complete | No | Pass |
| Hhs/Oig & Gsa Lists | Complete | No | |
| Hhs/Oig & Gsa Lists | Complete | No | Eligible |
| State Office Of Inspector General - Pennsylvania | Complete | No | |
| State Office Of Inspector General - Pennsylvania | Complete | No | Eligible |
| Esteem | Complete | Yes* | |
| Esteem | Complete | Yes* | Ineligible |

**Additional Searches Ordered**

NONE

\* There is inconsistency between what the consumer provided versus what LexisNexis Risk Solutions' research confirmed. Please refer to the corresponding detailed component report section for additional information.

\*\* Further review is required by the client to determine the consumer's eligibility based on background check results. Please refer to the corresponding detailed component report section for additional information.

\*\*\* This product has been blocked from delivery due to compliance related restrictions.

## Social Security Number Validation

**Note**

The Social Security Number Validation is a process where the SSN is confirmed as being issued by the Social Security Administration. The Social Security Number Validation also confirms that the SSN does not belong to a deceased individual.

| | |
|---|---|
| **Valid SSN?** Yes | **State Issued** PENNSYLVANIA |
| **Date Issued** BETWEEN 1989-1991 | **Reported Deceased?** No |

**Disclaimer**

The results of the Social Security Number Validation do not provide a verification that the Social Security Number belongs to the Consumer of this report.

---

## Social Security Verification
**Status:  Complete**
**Score:   Pass**

The Social Security Number Verification/Identity Verification (SSNV) performed for this applicant reviews NON-FCRA data designed to confirm the identity of the applicant prior to you reviewing the FCRA-regulated employment-related background check. As such, this identity confirmation is not part of the FCRA Consumer Report and does not use an FCRA database. Only the contents of the Consumer Report itself should be used as factors in evaluating an individual for employment, promotion, reassignment, or retention as an employee.

### Customer Provided Information

| | |
|---|---|
| **SSN** 179-70-XXXX | **DOB** 05/27/XXXX |

| | |
|---|---|
| **SSN State Issued** PA | **SSN Year Issued** 1991 |

| | | | |
|---|---|---|---|
| **Name Type** Report Subject | | **Name** MOORE, KYRA | |
| **Name Type** Former Name | | **Name** MOORE, KYRA L | |
| **Addr Type** Residence Address | | **First Date** | **Last** |
| **Address** 1415A N 23RD ST | | | |
| PHILADELPHIA, PA 19121-3881 | | | |
| **Addr Type** Former Address | | **First Date** 07/00/2006 | **Last** 07/00/2008 |
| **Address** 1415 N 23RD ST APT A | | | |
| PHILADELPHIA, PA 19121-3848 | | | |
| **Addr Type** Former Address | | **First Date** 06/00/2008 | **Last** 09/00/2008 |
| **Address** FIRST FLR FRONT 1746N | | | |
| PHILADELPHIA, PA 19121 | | | |
| **Addr Type** Former Address | | **First Date** 05/00/2008 | **Last** 03/00/2011 |
| **Address** 1746 N 16TH ST APT 1 | | | |
| PHILADELPHIA, PA 19121-3250 | | | |

**Remark**

AN IDENTITY VERIFICATION SEARCH HAS BEEN COMPLETED AND NO DISCREPANCIES WERE FOUND.

### Order Process History

| Date | Description |
|---|---|
| 04/22/2011 11:17:55 AM | Progressive Order Hold. |
| 04/22/2011 11:17:55 AM | Search In Progress. |
| 04/22/2011 11:18:23 AM | Search In Progress. |
| 04/22/2011 11:18:24 AM | Record Judged. |

---

## Hhs/Oig & Gsa Lists
**Status:  Complete**
**Score:   Eligible**

As of 04/22/2011, LexisNexis Risk Solutions has conducted a search of the GSA/HHS/OIG list of excluded individual/entities, and the list of excluded parties with the following reported results:

| | |
|---|---|
| **Search Results** Clear | **Termination Date** |
| **Name Ordered** KYRA MOORE | **Treatment 1** |

| Location | 101 SOUTH SECOND STREET HARRISBURG DAUPHIN COUNTY |
|---|---|
| Given Name Searched | KYRA MOORE |

**Source Status History**

| Status Date | Description |
|---|---|
| 04/22/2011 12:18:35 PM | Search in progress. Expected completion by 04/26/2011 |

**Remark**

THIS SEARCH ALSO COVERS: 1415A N 23RD ST. PHILADELPHIA. PHILADELPHIA COUNTY, PA; 1746 N 16TH ST. PHILADELPHIA, PHILADELPHIA COUNTY, PA; FIRST FLR. PHILADELPHIA. PHILADELPHIA COUNTY, PA; 1415 N 23RD ST. PHILADELPHIA, PHILADELPHIA COUNTY, PA;

**Order Process History**

| Date | Description |
|---|---|
| 04/22/2011 11:17:55 AM | Progressive Order Hold. |
| 04/22/2011 11:18:26 AM | Search In Progress. |
| 04/22/2011 12:18:35 PM | Search In Progress. |
| 04/25/2011 01:46:14 PM | Record Judged. |

---

**Esteem**                                                               Status: Complete
                                                                         Score: Ineligible

**Description**

ESTEEM DATABASE SEARCH – NAME SEARCHED:MOORE,KYRA

——————— BEGIN ESTEEM INCIDENT ———————

Incident ID: 3726022

Subject Details:
SSN: 17970XXXX   Match
Subject Name: Kyra  Moore   Match
Subject Alias Name:
Address: 1746 North 16th St. Apt1
City, State, Zip: Philadelphia, PA 19121
Phone:
ID Information:  No ID was recorded
Date of Birth: 5/27/XXXX    Match

Theft Location Details:
Member: CVS Corporation
Store name: Philadelphia 379
Location: 379

Theft Incident Details:
Admission Status: Verified admission statement
Legal Action:
Incident: Internal
Type of Offense: Theft of Merchandise
Incident Date: 7/26/2010
Theft Amount: $60.00

——————— END ESTEEM INCIDENT ———————

**Order Process History**

| Date | Description |
|---|---|
| 04/22/2011 11:17:55 AM | Progressive Order Hold. |
| 04/22/2011 11:18:26 AM | Record Ordered. |
| 04/22/2011 11:19:07 AM | Search In Progress. |
| 04/22/2011 04:24:08 PM | Search In Progress. |

| 04/22/2011 05:57:56 PM | Record Judged |
|---|---|

A Summary Of Your Rights Under the Fair Credit Reporting Act

The Federal Fair Credit Reporting Act (FCRA) is designed to promote accuracy, fairness, and privacy of information in the files of every "consumer reporting agency" (CRA). Most CRAs are credit bureaus that gather and sell information about you -- such as if you pay your bills on time or have filed bankruptcy --to creditors, employers, landlords, and other businesses. You can find the complete text of the FCRA, 15 U.S.C. §§§§1681-1681u, at http://www.ftc.gov/os/statutes/fcra.htm. The FCRA gives you specific rights, as outlined below. You may have additional rights under state law. You may contact a state or local consumer protection agency or a state attorney general to learn those rights.

* **You must be told if information in your file has been used against you.** Anyone who uses information from a CRA to take action against you -- such as denying an application for credit, insurance, or employment -- must tell you, and give you the name, address, and phone number of the CRA that provided the consumer report.

* **You can find out what is in your file.** At your request, a CRA must give you the information in your file, and a list of everyone who has requested it recently. There is no charge for the report if a person has taken action against you because of information supplied by the CRA, if you request the report within 60 days of receiving notice of the action. You also are entitled to one free report every twelve months upon request if you certify that (1) you are unemployed and plan to seek employment within 60 days, (2) you are on welfare, or (3) your report is inaccurate due to fraud. Otherwise, a CRA may charge you up to eight dollars.

* **You can dispute inaccurate information with the CRA.** If you tell a CRA that your file contains inaccurate information, the CRA must investigate the items (usually within 30 days) by presenting to its information source all relevant evidence you submit, unless your dispute is frivolous. The source must review your evidence and report its findings to the CRA. (The source also must advise national CRAs -- to which it has provided the data -- of any error.) The CRA must give you a written report of the investigation, and a copy of your report if the investigation results in any change. If the CRA's investigation does not resolve the dispute, you may add a brief statement to your file. The CRA must normally include a summary of your statement in future reports. If an item is deleted or a dispute statement is filed, you may ask that anyone who has recently received your report be notified of the change.

* **Inaccurate information must be corrected or deleted.** A CRA must remove or correct inaccurate or unverified information from its files, usually within 30 days after you dispute it. However, the CRA is not required to remove accurate data from your file unless it is outdated (as described below) or cannot be verified. If your dispute results in any change to your report, the CRA cannot reinsert into your file a disputed item unless the information source verifies its accuracy and completeness. In addition, the CRA must give you a written notice telling you it has reinserted the item. The notice must include the name, address and phone number of the information source.

* **You can dispute inaccurate items with the source of the information.** If you tell anyone -- such as a creditor who reports to a CRA -- that you dispute an item, they may not then report the information to a CRA without including a notice of your dispute. In addition, once you've notified the source of the error in writing, it may not continue to report the information if it is, in fact, an error.

* **Outdated information may not be reported.** In most cases, a CRA may not report negative information that is more than seven years old; ten years for bankruptcies.

* **Access to your file is limited.** A CRA may provide information about you only to people with a need recognized by the FCRA -- usually to consider an application with a creditor, insurer, employer, landlord, or other business.

* **Your consent is required for reports that are provided to employers, or reports that contain medical information.** A CRA may not give out information about you to your employer, or prospective employer, without your written consent. A CRA may not report medical information about you to creditors, insurers, or employers without your permission.

* **You may choose to exclude your name from CRA lists for unsolicited credit and insurance offers.** Creditors and insurers may use file information as the basis for sending you unsolicited offers of credit or insurance. Such offers must include a toll-free phone number for you to call if you want your name and address removed from future lists. If you call, you must be kept off the lists for two years. If you request, complete, and return the CRA form provided for this purpose, you must be taken off the lists indefinitely.

* **You may seek damages from violators.** If a CRA, a user or (in some cases) a provider of CRA data, violates the FCRA, you may sue them in state or federal court.

The FCRA gives several different federal agencies authority to enforce the FCRA:

FOR QUESTIONS OR CONCERNS PLEASE CONTACT:

| FOR QUESTIONS OR CONCERNS REGARDING: | PLEASE CONTACT |
|---|---|
| CRAs, creditors and others not listed below | Federal Trade Commission<br>Consumer Response Center- FCRA<br>Washington, DC 20580 * 202-326-3761 |
| National banks, federal branches/agencies of foreign banks (word "National" or initials "N.A." appear in or after bank's name) | Office of the Comptroller of the Currency<br>Compliance Management, Mail Stop 6-6<br>Washington, DC 20219 * 800-613-6743 |
| Federal Reserve System member banks (except national banks, and federal branches/agencies of | Federal Reserve Board<br>Division of Consumer & Community Affairs |

| | |
|---|---|
| foreign banks) | Washington, DC 20551 * 202-452-3693 |
| Savings associations and federally chartered savings banks (word "Federal" or initials "F.S.B." appear in federal institution's name) | Office of Thrift Supervision<br>Consumer Programs<br>Washington D.C. 20552* 800- 842-6929 |
| Federal credit unions (words "Federal Credit Union" appear in institution's name) | National Credit Union Administration<br>1775 Duke Street<br>Alexandria, VA 22314 * 703-518-6360 |
| State-chartered banks that are not members of the Federal Reserve System | Federal Deposit Insurance Corporation<br>Division of Compliance & Consumer Affairs<br>Washington, DC 20429 * 800-934-FDIC |
| Air, surface, or rail common carriers regulated by former Civil Aeronautics Board or Interstate Commerce Commission | Department of Transportation<br>Office of Financial<br>Management Washington, DC 20590 * 202-366-1306 |
| Activities subject to the Packers and Stockyards Act, | Department of Agriculture |