**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KYRA MOORE, on behalf of herself and others similarly situated,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **NO. 13-1515** |
| | : | |
| **RITE AID HDQTRS CORP., doing business as "RITE AID CORPORATION,"** | : | |
| **Defendant.** | : | |

**DuBois, J.**                                                                                            **May 28, 2015**

<u>M E M O R A N D U M</u>

## I.       INTRODUCTION

This putative class action arises out of defendant Rite Aid Headquarters Corp., d/b/a Rite Aid Corporation's ("Rite Aid") alleged violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 <u>et seq.</u>, through its use of employment-screening services provided by LexisNexis Screening Solutions, Inc. ("LexisNexis"). The putative class contains all employees or applicants for employment at Rite Aid residing in the United States who were the subject of a background report obtained from LexisNexis that classified them as "Non-Competitive" with respect to an application for employment or promotion at Rite Aid, within two years prior to the filing of this action, and to whom Rite Aid failed to provide a copy of their background report or a copy of the FCRA summary of rights at least five business days before such classification occurred. (Am. Compl. ¶ 66.)

Presently before the Court is defendant's Motion to Dismiss Plaintiff's First Amended Class Action Complaint ("Amended Complaint"). For the following reasons, the Court grants in part and denies in part the Motion.

## II. BACKGROUND[1]

### A. Facts Pertaining to Rite Aid's Employment Screening and Adjudication Process

At all times relevant to the instant litigation, Rite Aid contracted with LexisNexis to screen job applicants to determine their eligibility for hire or promotion. (Am. Compl. ¶¶ 4, 14–15, 19.) LexisNexis conducted background checks of Rite Aid job applicants and provided Rite Aid with background reports[2] that contained search results from multiple databases. These reports included information from LexisNexis's proprietary database known as "Esteem" or the "Retail Theft Contributory Database."[3] (Am. Compl. ¶ 16.) Esteem was a membership program offered to LexisNexis's customers in the retail business. Member employers such as Rite Aid contributed employees' Voluntary Admission Statements ("VAS") of theft or fraud to LexisNexis, which added these statements to the Esteem database and linked the statements to the identifying information for that individual in the database. (Am. Compl. ¶¶ 17–18.) In the event that the same individual was the subject of a future background inquiry from an employer member of Esteem, the database would report an Esteem "match" to the inquiring employer. (Am. Compl. ¶ 18.)

Under the contract between LexisNexis and Rite Aid, in addition to providing

---

[1] The facts are taken from the First Amended Class Action Complaint ("Amended Complaint") and are presented in the light most favorable to plaintiff.

[2] Rite Aid has assumed, for purposes of this Motion only, that LexisNexis background reports are consumer reports under the Fair Credit Reporting Act ("FCRA"). (Mot. to Dismiss, Sept. 22, 2014, at 9 n.5 [hereinafter Second Mot. to Dismiss].)

[3] Plaintiff alleges that LexisNexis used Esteem as part of its report and adjudication service through approximately April 2013. (Am. Compl. ¶ 16.)

background reports, LexisNexis adjudicated the eligibility of persons who applied for jobs or promotions at Rite Aid. (Am. Compl. ¶¶ 4, 19.) LexisNexis adjudicated each applicant's qualifications for a given position using a scoring matrix established by Rite Aid that classified applicants as "eligible, ineligible, or decisional." (Am. Compl. ¶ 21.) Rite Aid applicants who received an Esteem "hit" during the screening were "automatically scored and given the status 'Ineligible for Hire' (i.e., 'Non-Competitive'), removed from consideration for employment and not moved to Hire in the Rite Aid Screening Process." (Am. Compl. ¶¶ 23–24.) In contrast, those who were scored as "Eligible" moved to the hiring phase of Rite Aid's screening process. (Am. Compl. ¶ 23.) According to plaintiff, the LexisNexis adjudication served as the last step in Rite Aid's employment process, and any applicant classified as ineligible/non-competitive was in fact rejected for employment at that time. (Am. Compl. ¶¶ 30–31, 35.)

After adjudicating an applicant as ineligible/non-competitive, LexisNexis sent immediate electronic notice of the adjudication decision to Rite Aid and also mailed an initial notice letter to the applicant, printed on Rite Aid stationery. (Am. Compl. ¶ 33.) The initial notice letter was programmed to arrive after LexisNexis had completed the adjudication and Rite Aid had been notified of the results. (Id.) Although LexisNexis included a copy of applicants' background report with the initial notice letter, it did not provide applicants with the full report it relied upon in making adjudications on Rite Aid's behalf. (Am. Compl. ¶ 41.) Five days after sending the initial notice letter, LexisNexis, on behalf of Rite Aid, sent applicants a second letter — an "Adverse Action Notice" — informing applicants that they were not being offered employment or a promotion at Rite Aid. (Am. Compl. ¶ 37.)

## B. Facts Pertaining to Rite Aid's Employment Application Disclosures

Plaintiff further alleges that, at all times relevant to the present litigation, Rite Aid provided applicants for employment with disclosure forms as part of the application process. (Am. Compl. ¶¶ 47–48.) These disclosures informed applicants that Rite Aid could procure their background report from LexisNexis for employment purposes, pursuant to 15 U.S.C. § 1681b(b)(2)(A). (Am. Compl. ¶ 48.) According to plaintiff, the disclosures were printed on forms that contained additional language, such as releases of liability and waivers. (Am. Compl. ¶¶ 49–50.) During this period, Rite Aid "systematically obtained and used employment-purpose [background] reports from LexisNexis regarding its employment applicants and probationary employees." (Am. Compl. ¶ 51.)

## C. Facts Pertaining to Plaintiff Kyra Moore

Plaintiff Kyra Moore worked for CVS from 2006 to 2010. (Am. Compl. ¶¶ 52, 54–55.) In July 2010, CVS loss-prevention agents interviewed all employees working at the store where Moore was employed as to their possible role in contributing to "shrinkage" of store stock. (Am. Compl. ¶ 54.) During plaintiff's interview, the CVS loss prevention agent requested that plaintiff sign a "statement"[4] and then sent her home. (Am. Compl. ¶ 55.) Moore was never criminally charged with theft and does not have a criminal record. (Am. Compl. ¶ 56.)

Around April 2011, Moore applied for a store supervisor position at Rite Aid. (Am. Compl. ¶ 57.) During her interview, a Rite Aid district manager told Ms. Moore that she would start work after passing a drug test and background screen. (Id.) As part of the application

_____

[4] Although not stated in the Amended Complaint, it appears that the "statement" is plaintiff's VAS.

process, Moore was required to sign authorization and disclosure forms provided by Rite Aid, but allegedly the disclosures were not provided on standalone forms, as required under 15 U.S.C. § 1681b(b)(2)(A). (Am. Compl. ¶ 58.)

Shortly after April 25, 2011, Moore received an initial notice letter from LexisNexis dated April 25, 2011 and printed on Rite Aid stationery. (Am. Compl. ¶ 59 & Ex. A.) The initial notice letter stated, in relevant part:

> We have recently requested a criminal background report on you per your authorization. Attached is a copy of your background report, as well as a summary of your rights under the Federal Fair Credit Reporting Act and any additional rights under state laws (if applicable). The background report may result in your not being offered the job for which you are applying/the termination of your employment, whichever is applicable…. If any information on the attached report is inaccurate or incomplete, you have the right to dispute the information directly with LexisNexis Consumer Dispute line….

> If there is any information that you believe we should consider, in light of the attached report, before we make our decision whether to employ/terminate you whichever is applicable, you may contact the hiring manager with whom you have been in contact/your region[al] human resources manager….

> **If Rite Aid does not hear from you within five (5) business days from the date of your receipt of this letter, then you will not be offered employment/your employment will be terminated, whichever is applicable. If we hear from you within five (5) business days from the date of your receipt of this letter, we will consider whatever information you provide to us in making our final decision whether to employ/terminate you.** So that there is no confusion, if you wish to dispute the attached report in any way, it is solely your (not Rite Aid's) responsibility to contact LexisNexis directly.

(Am. Compl. Ex. A (emphasis added).)

The initial notice letter included a copy of the LexisNexis background report, which Rite Aid had ordered on April 22, 2011 and which was completed together with the adjudication of plaintiff's application by LexisNexis on April 25, 2011. (Am. Compl. ¶ 60.) The background

report stated that plaintiff had passed the criminal background check but was scored non-competitive due to a match in the Esteem database. (Am. Compl. ¶ 60.) With regard to the "Esteem Incident," the background report provided only the following information: (1) "Admission Status: Verified admission statement"; (2) "Incident: Internal"; (3) "Type of Offense: Theft of Merchandise"; (4) "Date of Incident: 7/26/2010"; and (5) "Theft Amount: $60.00." (Am. Compl. ¶ 61.) A copy of the VAS plaintiff completed at CVS and on which LexisNexis relied was not included with the background report. (Am. Compl. Ex. B.)

Plaintiff was not hired by Rite Aid, and according to plaintiff, she was rejected for employment "solely as a result of her being classified 'Non-Competitive' by Rite Aid's agent LexisNexis." (Am. Compl. ¶ 62.) After receiving the initial notice letter, plaintiff initiated a dispute with LexisNexis, which eventually resulted in the removal of her record from the Esteem database. (Am. Compl. ¶ 64.)

### D. Procedural History

Plaintiff filed her First Class Action Complaint ("First Complaint") on March 22, 2013. In the First Complaint, plaintiff alleged that defendant willfully violated 15 U.S.C. § 1681b(b)(3)(A) by taking an adverse action against her and the other putative class members before providing them with a copy of their background report, a written description of their rights, and a real opportunity to contest the LexisNexis background report and adjudication ("Count I").[5] Defendant filed its First Motion to Dismiss on May 31, 2013. By Memorandum and Order dated July 30, 2014, the Court dismissed with prejudice that part of Count I premised on

_____

[5] Plaintiff also brought a number of individual claims against LexisNexis in the First Complaint. Upon agreement of the parties, the Court dismissed those claims with prejudice by Order dated November 5, 2013.

defendant's alleged failure to provide plaintiff with a copy of the VAS she had completed at CVS. Moore v. Rite Aid Hdqtrs Corp., 33 F. Supp. 3d 569, 576 (E.D. Pa. 2014) [hereinafter "Moore I"] (DuBois, J.). The Court concluded that plaintiff had failed to state a claim as § 1681b(b)(3)(A) only requires an employer to provide an applicant with the information given to it by the consumer reporting agency, and plaintiff admitted that LexisNexis did not provide Rite Aid with a copy of the VAS she completed at CVS. Id. The Court also dismissed that part of Count I premised on defendant's alleged failure to provide plaintiff with a real opportunity to contest the LexisNexis background report and adjudication, as well as that part seeking statutory and punitive damages pursuant to 15 U.S.C. § 1681n, without prejudice to plaintiff's right to file an amended complaint if warranted by the facts and applicable law. Id.

Plaintiff filed the Amended Complaint on August 21, 2014. The Amended Complaint pleads new facts with respect to plaintiff's claim that defendant willfully violated 15 U.S.C. § 1681b(b)(3)(A) ("Count I"). The Amended Complaint also includes a new claim in Count II: that defendant willfully violated 15 U.S.C. § 1681b(b)(2)(A) by failing to provide plaintiff and class members with a clear and conspicuous written disclosure, in a document consisting solely of the disclosure, that defendant could obtain their background reports for employment purposes prior to procuring and using such reports. Plaintiff seeks, with respect to both claims, an award of statutory and punitive damages under 15 U.S.C. § 1681n, an award of pre-judgment and post-judgment interest as provided by law, an award of attorney's fees and costs, and "[s]uch other relief as the Court deems just and proper." (Am. Compl. ¶¶ 80, 88.)

### III. LEGAL STANDARD

The purpose of a 12(b)(6) motion to dismiss is to test the legal sufficiency of the claims, not the merits. Nelson v. Temple Univ., 920 F. Supp. 633 (E.D. Pa. 1996). To survive a motion to dismiss, plaintiff must allege sufficient facts that, if accepted as true, state a claim for relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937 (2009). A claim has facial plausibility when a plaintiff pleads facts that allow the court to draw the reasonable inference that the defendant may be liable for the misconduct alleged. Id. at 1949. However, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." Id. at 1950 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2009)); see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).

### IV. DISCUSSION

#### A. Count I: Violation of 15 U.S.C. § 1681b(b)(3)(A)

Plaintiff claims that Rite Aid willfully violated 15 U.S.C. § 1681b(b)(3)(A) of the FCRA, which provides that:

> [I]n using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates —
>
> (i) A copy of the report; and
>
> (ii) A description in writing of the rights of the consumer under [the FCRA].[6]

---

[6] Rite Aid has assumed, for purposes of this Motion only, that LexisNexis meets the definition of a consumer reporting agency, 15 U.S.C. § 1681a(f), and that LexisNexis background reports are consumer reports, id. § 1681a(d). (Second Mot. to Dismiss 9 nn. 4–5.) Further, Rite Aid is a person, 15 U.S.C. § 1681a(b), and plaintiff is a consumer, id. § 1681a(c).

In the employment context, an adverse action is defined as the "denial of employment or any other decision for employment purposes that adversely affects any current or prospective employee." 15 U.S.C. § 1681a(k)(1)(B)(ii). The notice required under § 1681b(b)(3)(A) prior to an employer taking an adverse action is generally referred to as pre-adverse action notice, and its "clear purpose" is "to afford employees time to discuss reports with employers or otherwise respond before adverse action is taken." Goode v. LexisNexis Risk & Info. Analytics Grp., Inc., 848 F. Supp. 2d 532, 537 (E.D. Pa. 2012) [hereinafter "Goode I"] (DuBois, J.). Section 1681b(b)(3)(A) thus requires an employer to provide job applicants with their background report, summary of rights, and a "real opportunity" to contest the contents of the background report before the employer relies on the report to take an adverse action against the applicant. Id. at 540.

In the First Complaint, plaintiff contended that Rite Aid violated § 1681b(b)(3)(A) by denying plaintiff a real opportunity to dispute her background report before the alleged adverse action — namely, the negative adjudication by LexisNexis — occurred. (First Compl. ¶ 70.) The Court, in its Memorandum and Order of July 30, 2014, concluded that, in order for the LexisNexis adjudications to constitute adverse actions on the part of Rite Aid, plaintiff was required to allege that Rite Aid "relied on those adjudications as final employment decisions and that the five-day period provided for in the initial notice letter was not a real opportunity for her to contest the adjudication."[7] Moore I, 33 F. Supp. 3d at 575. Because the Court determined that

_____

[7] As noted in Part II.C, the initial notice letter stated that plaintiff had five business days after receipt of the letter and background report to provide additional information to Rite Aid before Rite Aid took action on her job application.

plaintiff had failed to make these allegations in the First Complaint, it granted defendant's First Motion to Dismiss without prejudice to plaintiff's right to file an amended complaint.

Upon consideration of the Amended Complaint, the Court concludes that plaintiff now sufficiently alleges both that Rite Aid relied on LexisNexis adjudications as final employment decisions and that the five-day period provided in the initial notice letter was not a real opportunity to contest the adjudication. Plaintiff has thus stated a claim for relief under § 1681b(b)(3)(A).

First, the Court concludes that plaintiff has sufficiently alleged that Rite Aid relied upon the LexisNexis adjudications as final employment decisions. Specifically, plaintiff alleges that once an applicant was adjudicated as ineligible/non-competitive, Rite Aid automatically removed that applicant from the "hire" track and, as a matter of custom and practice, actually rejected the applicant at that time. (Am. Compl. ¶¶ 23–24, 30–31, 35.) Plaintiff alleges that Rite Aid took these actions prior to sending applicants, including herself, the initial notice letter with the background report and summary of rights, as required under § 1681b(b)(3)(A), and thus applicants had no time to initiate a challenge to the report and adjudication before Rite Aid deemed them ineligible and denied them employment. (Am. Compl. ¶¶ 33–34, 62–63.) The Court concludes that these allegations are sufficient at this stage to demonstrate that Rite Aid took an adverse action against plaintiff prior to sending her the background report and summary of rights and thus are sufficient to state a claim for relief under § 1681b(b)(3)(A). Although defendant contends that plaintiff's allegations require further factual support, (Mot. to Dismiss, Sept. 22, 2014, at 21–23 [hereinafter Second Mot. to Dismiss]), the Court determines that

plaintiff's allegations are adequate, particularly given the limits of developing the record with respect to Rite Aid's internal decision-making process prior to discovery.

Plaintiff further alleges that, in the event Rite Aid <u>did not</u> make its final employment decision until after it sent the initial notice letter and provided plaintiff an opportunity to respond to the background report, Rite Aid did not allow her sufficient time to respond. Plaintiff advances two arguments to support this claim. First, plaintiff alleges that, contrary to the initial notice letter, Rite Aid did not actually provide her with a full five business days from receipt of the initial notice letter to contest the background report and adjudication. (Am. Compl. ¶¶ 37–38.) Second, plaintiff contends that she was not provided with key information used to adjudicate her application for employment — the VAS completed by plaintiff at CVS — and thus had insufficient information to raise a challenge with Rite Aid prior to the mailing of the final adverse action notice. (Am. Compl. ¶ 41.) The Court concludes that both arguments state a plausible claim for relief under § 1681b(b)(3)(A).

The Court first determines that plaintiff has stated a claim for relief based on her allegation that Rite Aid did not actually provide her with five business days from her receipt of the initial notice letter to contest the background report and adjudication before Rite Aid denied her employment. As noted in Part II.C, Rite Aid informed plaintiff in the initial notice letter that she had five business days from the <u>receipt</u> of that letter to provide Rite Aid with additional information before Rite Aid took action on her application for employment. Plaintiff alleges, however, that it was Rite Aid's policy for LexisNexis to print and mail the final adverse action notice on Rite Aid's behalf five business days after mailing the initial notice letter. (Am. Compl. ¶ 37.) Because it takes at least one day for the initial notice letter to reach an applicant via mail,

applicants never had the full five business days to respond before the final adverse action notice

denying them employment was mailed. (Id.) Plaintiff avers that her initial notice letter was

mailed on April 25, 2011, and she received it shortly thereafter;[8] whereas the final adverse action

letter denying plaintiff employment with Rite Aid was printed and mailed on May 2, 2011[9] —

five business days after the <u>date</u> of the initial notice letter but at most <u>four</u> business days from

plaintiff's <u>receipt</u> of the initial notice letter.

Courts have recognized that a defendant's failure to actually provide plaintiff with the

full response period stated in the initial notice letter is a cognizable claim under

§ 1681b(b)(3)(A). For example, in <u>Reardon v. ClosetMaid Corp.</u>, the district court held, in the

context of a motion for summary judgment, that a jury could reasonably find that plaintiff was

not given a "reasonable time" to dispute the derogatory information in her credit report,

"especially where the pre-adverse action notice itself explicitly provides that ClosetMaid would

'wait five business days from the date of this letter before it makes a final decision on

[plaintiff's] application,' and then [only waited four days]." No. 08-1730, 2013 WL 6231606, at

[8] Plaintiff does not allege the exact date of receipt, only that she received the initial notice letter shortly after April 25, 2011. (Am. Compl. ¶ 59.)

[9] Plaintiff does not allege the date that the final adverse action notice was sent to her. Defendant, however, attached the letter to its Motion to Dismiss as Exhibit 1, and the letter is dated May 2, 2011. As the Amended Complaint contains allegations regarding the final adverse action notice, and Count I is based in part on this document, (Am. Compl. ¶ 37), the letter is properly considered in deciding the present Motion to Dismiss. <u>Pension Ben. Guar. Corp. v. White Consol. Industries, Inc.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993) (holding that "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document"); <u>see also</u> <u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.</u>, 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference….").

*13 (W.D. Pa. Dec. 2, 2013). Plaintiff's allegations mirror those of the plaintiff in <u>Reardon</u>, and thus the Court concludes that, taking plaintiff's allegations as true, she has stated a claim for relief under § 1681b(b)(3)(A) that is plausible on its face.

Second, plaintiff has stated a claim for relief based on her allegation that she did not have the full information that LexisNexis relied upon in adjudicating her eligibility for employment, namely a copy of her VAS from CVS, and thus could not meaningfully respond to the background report and adjudication before the final adverse action notice was mailed.[10] (Am. Compl. ¶¶ 38, 41, Ex. B.) As this Court noted in <u>Goode I</u>, plaintiff's access to her VAS was critical to launching a meaningful challenge to the background report as the VAS "is the only evidence of the theft incident underlying the [LexisNexis] report and adjudication." 848 F. Supp. 2d at 545. Simply put, "[t]here is no way for plaintiff[] to challenge inaccurate information without the admission statement." <u>Id.</u> Although Rite Aid did not have a legal obligation to provide plaintiff with the VAS,[11] plaintiff had a right to request her consumer file, including the

---

[10] <u>See</u> <u>Moore v. Rite Aid Hdqtrs Corp.</u>, 33 F. Supp. 3d 569, 576 (E.D. Pa. 2014) [hereinafter "Moore I"] (noting that, in the First Complaint, plaintiff failed to allege that the paucity of information in the background report prevented her from making a meaningful response to Rite Aid).

[11] As noted in Part II.D, the Court held in <u>Moore I</u> that plaintiff could not argue that Rite Aid had a legal obligation to provide plaintiff with a copy of her VAS as plaintiff admitted that Rite Aid never received a copy of the VAS and, under the FCRA, Rite Aid was only obligated to provide plaintiff with the information it received from LexisNexis. 33 F. Supp. 3d at 576. Defendant now argues that the Court's prior ruling forecloses plaintiff's claim that, without the VAS, she lacked sufficient information to contest the background report and adjudication. (Second Mot. to Dismiss 14–15.) Plaintiff does not, however, allege in the Amended Complaint that defendant owed her a legal duty to provide the VAS but that, without the VAS, she had an inadequate period of time to investigate and contest the adjudication. Consequently, the Court determines that its opinion in <u>Moore I</u> does not foreclose plaintiff's argument in this regard.

VAS, from LexisNexis. Id. at 544–45; 15 U.S.C. § 1681g(a)(1) (stating that "[e]very consumer reporting agency shall, upon request … clearly and accurately disclose to the consumer … [a]ll information in the consumer's file at the time of the request"). Given the importance of the VAS to launching a meaningful challenge with Rite Aid, and the time it would take for plaintiff to procure the VAS from LexisNexis, the Court concludes that plaintiff has adequately alleged that the period of time between receipt of the initial notice letter and mailing of the final adverse action notice — at most, four business days — was not a reasonable amount of time for her to contest the background report and adjudication prior to Rite Aid denying her application for employment.

In sum, the Amended Complaint alleges what the Court identified as missing from the First Complaint: that Rite Aid relied on LexisNexis adjudications as final employment decisions and that the five-day period provided for in the initial notice letter was not a real opportunity for her to contest the adjudication prior to Rite Aid denying her application for employment. The Court thus concludes that plaintiff has stated a claim for relief under § 1681b(b)(3)(A) that is plausible on its face.

### B.     Count II: Violation of 15 U.S.C. § 1681b(b)(2)(A)

Plaintiff raises a new claim in her Amended Complaint — that defendant willfully violated 15 U.S.C. §1681b(b)(2)(A), which provides, in relevant part:

> [A] person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless:
>
> > (i)  a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure,

14

> that a consumer report may be obtained for employment purposes; and
>
> (ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person."

Plaintiff alleges that Rite Aid violated §1681b(b)(2)(A) by requiring plaintiff to sign a disclosure that was printed on a form that included other language, such as releases of liability and waivers, prior to obtaining her background report from LexisNexis. (Am. Compl. ¶¶ 49–50, 58.)

Defendant argues that plaintiff's claim is time barred because plaintiff filed the Amended Complaint more than two years after discovering the alleged violation and the claim does not relate back to the First Complaint. In response, plaintiff contends that she filed the Amended Complaint within the FCRA statute of limitations and that, regardless, the claim relates back to the First Complaint as the claim arose out of the same conduct or occurrence set out in the original pleading. For the following reasons, the Court concludes that plaintiff's claim under § 1618b(b)(2)(A) was raised after the FCRA statute of limitations had run but that the claim is timely because it relates back to the timely-filed First Complaint.

      1.    <u>Statute of Limitations under 15 U.S.C. § 1681p</u>

Under the FCRA, a claim must be raised by the earlier of "(1) 2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or (2) 5 years after the date on which the violation that is the basis for such liability occurs." 15 U.S.C. § 1681p. Plaintiff argues that the date of discovery of the violation was June 2013, when plaintiff's counsel learned that Rite Aid required plaintiff to sign a disclosure that was not on a stand-alone form. (Pl. Resp. 22.) As the Amended Complaint was filed just over a year later, in August 2014,

the two-year statute of limitations had not run and the claim was timely filed. (Id.) Defendant argues, however, that the date of discovery was April 2011, after plaintiff signed the disclosure form and learned that Rite Aid had procured the background report, and thus the two-year statute of limitations expired in April 2013. (Def. Reply 16.)

Under Federal Rule of Civil Procedure 8(c), the statute of limitations constitutes an affirmative defense to an action. The limitations defense may only be raised on a motion under Rule 12(b)(6) "if the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." Bethel v. Jendoco Const. Corp., 570 F.2d 1168, 1174 (3d Cir. 1978). In this case, the Amended Complaint, on its face, demonstrates that the claim was not brought within the statute of limitations period and thus it is appropriate for the Court to address the defense at this stage of the proceedings.

The Court agrees with defendant that the two-year statute of limitations began to run in late-April 2011, when plaintiff "discover[ed] the facts that give rise to [her] claim and not when [she] discover[ed] that those facts constitute a legal violation." Mack v. Equable Ascent Fin., LLC, 748 F.3d 663, 665–66 (5th Cir. 2014) (holding that the FCRA two-year statute of limitations began to run when plaintiff discovered that his credit report had been obtained without his consent, not when plaintiff became aware that this constituted a legal violation). In the context of §1681b(b)(2)(A), a plaintiff discovers the facts giving rise to her claim when she learns that the defendant actually procured the background report after she signed the allegedly deficient disclosure form. Singleton v. Domino's Pizza, LLC, No. 11-1823, 2012 WL 245965, at *7 (D. Md. Jan. 25, 2012). In this case, plaintiff learned of the facts giving rise to her claim around the end of April 2011, when she received the initial notice letter informing her that Rite

Aid had obtained her background report from LexisNexis. As the two-year statute of limitations

began to run in April 2011, it expired in April 2013, well over a year before plaintiff filed her

Amended Complaint in August 2014.[12]

### 2. Relation-Back Doctrine

Plaintiff argues, however, that even if the Amended Complaint was filed after the two-

year statute of limitations period had run, her claim under §1681b(b)(2)(A) relates back to the

timely-filed First Complaint.[13] Under Federal Rule of Civil Procedure 15(c)(1)(B), "[a]n

amendment to a pleading relates back to the date of the original pleading when … the

amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set

out — or attempted to be set out — in the original pleading." In applying this rule, the Court

looks for "a common core of operative facts in the two pleadings" and examines whether

amendments to the complaint "restate the original claim with greater particularity or amplify the

factual circumstances surrounding the pertinent conduct." Glover v. F.D.I.C., 698 F.3d 139, 145–

46 (3d Cir. 2012). An amendment, however, "does not relate back…when it asserts a new

ground for relief supported by facts that differ in both time and type from those the original

pleading set forth." Mayle v. Felix, 545 U.S. 644, 650 (2005). Ultimately, the touchstone for

relation back is whether the original complaint gave defendant "fair notice of the general fact

situation and the legal theory upon which the amending party proceeds." Glover, 698 F.3d at

146.

---

[12] Plaintiff also argues that her claim under §1681b(b)(2)(A) is timely because it was filed within five years of when the violation occurred, in accordance with § 1681p(2). The applicable statute of limitations, however, is the earlier of either the two-year or five-year periods.

[13] Plaintiff filed the First Complaint on March 22, 2013.

The Court concludes that plaintiff's amended claim under §1681b(b)(2)(A) shares a "common core of operative fact" with the allegations in the First Complaint, namely, Rite Aid's alleged failure to comply with the FCRA in its procurement and use of the LexisNexis background reports for employment purposes. The First Complaint focused on Rite Aid's practice of regularly procuring these reports as the last step in its hiring process, and alleged that Rite Aid informed plaintiff that it would procure her background report as part of the hiring process. (First Compl. ¶¶ 32, 44.) The Amended Complaint amplifies the factual circumstances surrounding defendant's procurement of the background reports by detailing how Rite Aid obtained plaintiff's consent to do so. (Am. Compl. ¶¶ 47–49, 51.)

Defendant argues that the claim does not relate back because the First Complaint does not specifically mention the disclosure form. (Second Mot. to Dismiss 29–30.) This is not dispositive. See Spicer v. Villanova Univ., No. 06-1411, 2006 WL 3486465, at *1–2 (E.D. Pa. Dec. 1, 2006) (concluding that, despite the fact that plaintiff did not mention her disability in the original complaint, her claim for disability-based employment discrimination related back to her original claims of employment discrimination on the basis of race and sex as the amended claims stemmed from the same "factual core" as the original complaint). It is sufficient that the facts alleged in both complaints concern the same period of time — specifically, the period in which Rite Aid informed plaintiff that it would procure her consumer report as part of her application for employment — and are of the same type — i.e., facts that allege deficiencies in Rite Aid's process for procuring and using the LexisNexis background reports for employment purposes. Given that the facts in the Amended Complaint are of the same "time and type" as those in the First Complaint, Mayle, 545 U.S. at 650, the Court concludes that defendant had fair notice of

18

the general factual situation and legal theory upon which plaintiff proceeds and thus plaintiff's claim under § 1681b(b)(2)(A) relates back to the First Complaint for purposes of the statute of limitations. For these reasons, the Court determines that Count II was timely filed and thus denies defendant's Motion to Dismiss on this ground.

## C. Entitlement to Damages under 15 U.S.C. § 1681n

Pursuant to 15 U.S.C. § 1681n, a defendant is liable for statutory and punitive damages if it willfully failed to comply with the requirements of the FCRA. If the violation is merely negligent, plaintiff can recover only actual damages under § 1681*o*. In the present case, plaintiff seeks statutory and punitive damages and thus must demonstrate that defendant's alleged violations were willful. See Long v. Tommy Hilfiger U.S.A., Inc., No. 09-1701, 2011 WL 635271, at *6 (W.D. Pa. Feb. 11, 2011).

Under the FCRA, willful violations include both knowing and reckless violations. Safeco Ins. Co. of America v. Burr, 551 U.S. 47, 57 (2007). A defendant does not act in reckless disregard of the FCRA "unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that [defendant] ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." Id. at 69. In other words, defendant's conduct is reckless "only if it was 'objectively unreasonable' in light of 'legal rules that were clearly established at the time' [of the violation]." Fuges v. Sw. Fin. Servs., Ltd., 707 F.3d 241, 249 (3d Cir. 2012) (quoting Safeco, 551 U.S. at 69–70). In determining whether a reading of the statute was objectively unreasonable, courts examine the text of the statute, case law that existed at the time of the alleged violation, and any agency interpretations. Seamans v. Temple Univ., 744 F.3d 853, 868 (3d Cir. 2014) (citing Safeco, 551 U.S. at 69–70). While "[a]

dearth of authoritative guidance makes it less likely that a party's conduct was objectively unreasonable," "the absence of such authority does not immunize an actor from potential liability where the statute is far too clear to support the actor's interpretation." Id.; see also Dennis v. Trans Union, LLC, No. 14-2865, 2014 WL 5325231, at *8 (E.D. Pa. Oct. 20, 2014).

Defendant contends that plaintiff has failed to plead facts demonstrating that defendant's conduct was willful with respect to either Count I or Count II. The Court addresses defendant's arguments with respect to each count in turn.

### 1. Willful Violation of § 1681b(b)(3)(A) (Count I)

Defendant contends that plaintiff has failed to plead facts demonstrating that defendant's reading of § 1681b(b)(3)(A) was objectively unreasonable, and thus willful, because, according to defendant, it did not take an adverse action against plaintiff before sending the initial notice letter and did provide plaintiff a sufficient amount of time to dispute the background report. (Second Mot. to Dismiss 35–36.) These arguments, however, go to the merits of plaintiff's claim. At this stage, plaintiff simply must allege sufficient facts to demonstrate that the alleged violation, as plead, amounts to an objectively unreasonable reading of the statute. The Court concludes that plaintiff has satisfied this burden in part with respect to Count I.

First, the Court determines that plaintiff has adequately plead willfulness to the extent that she argues that Rite Aid actually rejected her application for employment prior to sending her the initial notice letter, background report, and summary of rights. The FCRA explicitly provides that a denial of employment constitutes an adverse action and that an employer may not take such action before providing applicants with the background report and summary of rights. 15 U.S.C. § 1681a(k)(1)(B)(ii); id. § 1681b(b)(3)(A); see also Obabueki v. Int'l Bus. Machs.

Corp., 145 F. Supp. 2d 371, 391 (S.D.N.Y. 2001) (noting that under the FCRA an adverse action includes the denial of employment). Given the clear language of the statute, plaintiff has sufficiently alleged that Rite Aid's conduct in this regard was objectively unreasonable under the FCRA.

Second, plaintiff has adequately plead willfulness to the extent that her claim under § 1681b(b)(3)(A) is based on the argument that Rite Aid did not provide her with five business days from the receipt of the initial notice letter to respond after informing her that it would not deny her employment before that time. "Generally, courts have allowed a willful noncompliance claim [under the FCRA] to proceed where a defendant's conduct involves willful misrepresentations or concealments." Cousin v. Trans Union Corp., 246 F.3d 359, 372 (5th Cir. 2001); see also Cushman v. Trans Union Corp., 115 F.3d 220, 227 (3d Cir. 1997) (noting that punitive damages under 15 U.S.C. § 1681n are appropriate where defendant's actions are "on the same order as willful concealments or misrepresentations"). In this case, plaintiff alleges that Rite Aid informed her that she had five business days to respond to the initial notice letter but, in reality, implemented a policy that provided her with at most four business days to respond before denying her employment. The Court concludes that these allegations are sufficient to demonstrate that Rite Aid willfully misrepresented to plaintiff the amount of time that she would have to contact Rite Aid before the company took an adverse action against her, thus denying her a real opportunity to contest the background report and adjudication. For these reasons, plaintiff has stated a claim for willful violation of § 1681b(b)(3)(A).

Plaintiff, however, cannot state a claim of willfulness to the extent that Count I is based on the allegation that she did not have sufficient time to contest the background report and

adjudication before an adverse action was taken against her because she did not have a copy of the VAS from CVS on which LexisNexis relied. Neither plaintiff nor the Court has identified any case law or administrative guidance in existence at the time of the alleged violation that would put defendant on notice either that (1) it was required to provide plaintiff with time to procure her consumer file from LexisNexis before taking an adverse action against her, or (2) what period of time would be reasonable to allow plaintiff to do so. Given the absence of any such authority, the Court determines that defendant's conduct in this regard cannot be said to be willful. See Safeco, 551 U.S. at 70 (concluding that defendant's reading of the FCRA was not objectively unreasonable where, inter alia, that there was no authoritative guidance from the courts of appeals or the Federal Trade Commission ("FTC") that "might have warned [defendant] away from the view it took" on the law). Thus, to the extent that Count I is premised on this argument, plaintiff's relief is limited to actual damages, costs, and reasonable attorney's fees under § 1681o.

2.     <u>Willful Violation of § 1618b(b)(2)(A) (Count II)</u>

With respect to plaintiff's claim under § 1681b(b)(2)(A), defendant contends that plaintiff has failed to allege facts tending to show that defendant's conduct was willful because plaintiff has not alleged specific facts relating to the placement of the disclosure form in plaintiff's application for employment. (Second Mot. to Dismiss 36.) The Court rejects this argument. Plaintiff's allegation that the disclosure was placed on a form with additional liability provisions and waivers is enough to state a plausible claim of willfulness.

Looking first to the plain language of § 1681b(b)(2)(A), the Court notes that the statute unambiguously provides that the disclosure must be "clear and conspicuous" and set forth "in a

document that consists <u>solely</u> of the disclosure." 15 U.S.C. § 1681b(b)(2)(A) (emphasis added); <u>Reardon</u>, 2013 WL 6231606 at *10 (noting that § 1681b(b)(2)(A) "is unambiguous and not susceptible of differing interpretations."). The only exception to the requirement that the disclosure be provided on a stand-alone form is that "the required written authorization may be made on the same document" as the disclosure. <u>Reardon</u>, 2013 WL 6231606 at *10. As the district court noted in <u>Reardon v. ClosetMaid Corp.</u>, the language of the statute provides a "clear prohibition on an employer's inclusion of <u>any</u> additional provision, excluding the authorization itself, in the disclosure form." <u>Id.</u> (emphasis added).

The FTC has also advanced this understanding of § 1681b(b)(2)(A) in its administrative guidance. In an Opinion Letter dated June 12, 1998, the FTC advised against including material — particularly a waiver of consumer rights provision — other than the disclosure and authorization in the form, as the inclusion of the additional language would violate the FCRA. Letter from William Haynes, Attorney, Div. of Credit Practices, Fed. Trade Comm'n, to Richard W. Hauxwell, CEO, Accufax Div. (June 12, 1998), 1998 WL 34323756 (F.T.C.), 1. Other FTC opinion letters have advised that the disclosure form "should include <u>nothing more</u> than the disclosure and the authorization for obtaining a consumer report," Letter from Cynthia Lamb, Investigator, Div. of Credit Practices, Fed. Trade Comm'n, to Richard Steer, Jones Hirsch Connors & Bull, P.C. (Oct. 21, 1997), 1997 WL 33791227 (F.T.C.), 1 (emphasis added), and that "[n]othing else may appear on the document that detracts from the disclosure." Letter from William Haynes, Attorney, Div. of Credit Practices, Fed. Trade Comm'n, to Harold Hawkey, Employers Assoc. of N.J. (Dec. 18, 1997), 1997 WL 33791224 (F.T.C.), 1 n.3.

In this case, plaintiff alleges that defendant provided the required disclosure on forms that

included additional language, such as releases of liability and waivers. At the time of the alleged violation, both the text of the statute and the available agency guidance demonstrated that the inclusion of information on the form apart from the disclosure and related authorization violates § 1681b(b)(2)(A). Taken as true, plaintiff's allegations are sufficient to show that defendant's conduct was objectively unreasonable in light of the clear state of the law and thus plaintiff has stated a plausible claim for a willful violation of § 1681b(b)(2)(A).

## V.      CONCLUSION

For the foregoing reasons, Rite Aid's Motion to Dismiss is granted in part in that plaintiff's recovery under Count I is limited to actual damages, costs, and attorney's fees under 15 U.S.C. § 1681*o* to the extent that Count I is based on the allegation that plaintiff did not have sufficient time to challenge the background report and adjudication before Rite Aid took adverse action against her because she did not have a copy of her VAS. The Motion is denied in all other respects.

An appropriate order follows.