**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **KYRA MOORE, on behalf of herself and others similarly situated,** | **CIVIL ACTION** |
| **Plaintiff,** | |
| **v.** | |
| | **NO. 13-1515** |
| **RITE AID HDQTRS CORP., doing business as "RITE AID CORPORATION,"** | |
| **Defendant.** | |

**DuBois, J.**                                                                                      **December 20, 2017**

**M E M O R A N D U M**

## I.      INTRODUCTION

In this putative class action, plaintiff Kyra Moore asserts, on behalf of herself and similarly situated individuals, that defendant Rite Aid Hdqtrs Corp. ("Rite Aid") violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, in its use of employment-screening services provided by LexisNexis Screening Solutions, Inc. ("LexisNexis"). The putative class members are employees or applicants for employment at Rite Aid who suffered an adverse employment action as a result of background reports obtained from LexisNexis. Presently before the Court is Plaintiff's Motion for Class Certification (Doc. No. 54) and Defendant Rite Aid Hdqtrs. Corp.'s Motion to Dismiss Under Fed. R. Civ. P. 12(b)(1) or, in the Alternative, for Summary Judgment (Doc. No. 65). For the reasons that follow, the Court grants Rite Aid's Motion to Dismiss, denies Rite Aid's alternative Motion for Summary Judgment as moot, and denies plaintiff's Motion for Class Certification.

## II.    BACKGROUND

The facts set forth in this Memorandum are drawn from the record before the Court.

*1.  Plaintiff's Application to Rite Aid*

Plaintiff was an applicant for employment at Rite Aid and was given a conditional offer of employment pending the results of a background check.  Kyra Moore Dep. Tr. 116:2-14.  Rite Aid contracted with LexisNexis to conduct background checks on applicants for employment across multiple databases, and to adjudicate their applications for employment.  Sarah Taylor Dep. Tr. 93:6-9.  The databases included LexisNexis's proprietary Esteem database ("Esteem"), which contained Voluntary Admission Statements ("VAS") of theft or fraud by employees of LexisNexis's retail customers.  Answer to Am. Compl., Doc. No. 46 ¶ 16; Charge of Discrimination, Doc. No. 57-2, exh. 27 ¶ 9.  In searching Esteem as part of plaintiff's background check, LexisNexis discovered a VAS submitted by plaintiff after she was accused of shoplifting while employed at CVS—an accusation plaintiff denies.  Pl. Resp. to Def. St. Undisputed Facts, Doc. No. 70 ¶¶ 1-2; Moore Dep. Tr. 48:10-14, 53:6-15

As part of its services to Rite Aid, LexisNexis assigned labels to applications based on a scoring matrix of criteria provided by Rite Aid.  Decl. Steven Chesney ¶ 9; Taylor Dep. Tr. 93:19-94:5.  Based on her background report, LexisNexis adjudicated plaintiff "Non-Competitive," or ineligible for hire.  Taylor Dep. Tr. 77:8-12, 79:4-7.  According to plaintiff, the LexisNexis adjudication served as the last step in Rite Aid's employment process.  Any applicant classified as Non-Competitive was in fact rejected for employment at that time.  Pl. Resp. to Def. St. Undisputed Facts, Doc. No. 70 ¶ 7.

When plaintiff applied to Rite Aid in 2011, LexisNexis automatically mailed notices to applicants who were labeled Non-Competitive ("Pre-Adverse Action Notices") in an effort to

comply with 15 U.S.C. § 1681b(b)(3) of the FCRA. Natasha J. Shupp Dep. Tr. 72:24-73:3, 91:2-10. After adjudicating plaintiff as Non-Competitive, LexisNexis mailed her a Pre-Adverse Action Notice dated April 25, 2011, on Rite Aid stationary. Shupp Dep. Tr. 72:19-73:5. The Pre-Adverse Action Notice stated that Rite Aid had requested a "criminal background report" on plaintiff and, in relevant part:

> If Rite Aid does not hear from you within five (5) business days from the date of your receipt of this letter, then you will not be offered employment/your employment will be terminated, whichever is applicable. If we hear from you within five (5) business days from the date of your receipt of this letter, we will consider whatever information you provide to us in making our final decision whether to employ/terminate you. So that there is no confusion, if you wish to dispute the attached report in any way, it is solely your (not Rite Aid's) responsibility to contact LexisNexis directly.

Doc. 57-2 exh. 12. The Pre-Adverse Action Notice included a copy of the of the LexisNexis background report, but it did not include a copy of the VAS. Pl. Resp. to Def. St. Undisputed Facts, Doc. No. 70 ¶ 1.

Although the Pre-Adverse Action Notices were automatically mailed by LexisNexis, the label of Non-Competitive "could be overridden" by Rite Aid. Robert Helms Dep. Tr. 129:8-9; *accord* Decl. Chesney ¶ 23. Hiring managers at the store level within Rite Aid "could absolutely defend their individual applicant[s]" by working with upper level management. Taylor Dep. Tr. 85:10-17. "In the event that an applicant's background report was accurate, but he or she wanted to provide Rite Aid with mitigating facts to consider in its hiring decision, the Pre-Adverse Action letter directed such applicants to call or e-mail their relevant hiring manager. While the hiring manager could not simply ignore the 'Non-Competitive' rating, he or she had the option of escalating compelling cases to be reviewed on a case-by-case basis." Decl. Chesney ¶¶ 21-23. If approved, an "override process" of LexisNexis's label was available. *Id.* ¶ 23.

If Rite Aid did not override the label, LexisNexis would automatically mail a letter notifying the applicant that he or she was not being offered employment ("Adverse Action Notice"). Shupp Dep. Tr. 72:24-73:3, 91:2-10; Taylor Dep. Tr. 93:19-94:5. As with the Pre-Adverse Action Notice, LexisNexis mailed the Adverse Action Notice on behalf of Rite Aid and on Rite Aid stationary. Shupp Dep. Tr. 72:24-73:3, 85:3-5; Doc. No. 67-1, exh. 24. In 2011, LexisNexis mailed the Adverse Action Notices for most applicants five business after mailing the Pre-Adverse Action Notice in accordance with Rite Aid policy. Shupp Dep. Tr. 103:2-104:24. From 2011 through 2014, there were approximately two to three percent fewer Adverse Action Notices than Pre-Adverse Action Notices sent out. Shupp Dec. ¶ 27.

As noted above, LexisNexis sent plaintiff a Pre-Adverse Action Notice on or about April 25, 2011. Pl. Resp. to Def. St. Undisputed Facts, Doc. No. 70 ¶ 12. After receiving the Pre-Adverse Action Notice, Plaintiff supplied "mitigating facts" to both Rite Aid and LexisNexis. Significantly, she contacted Rite Aid prior to the expiration of the five days referenced in the Pre-Adverse Action Notice. Pl. Resp. to Def. St. Undisputed Facts, Doc. No. 70 ¶¶ 19–20; Moore Dep. Tr. 124:1-5, 8-13. Plaintiff spoke with the store manager, including "about CVS," and the store manager relayed her concerns to upper management. Moore Dep. Tr. 124:1-5, 8-13; Helms Dep. Tr. 57:2-16. During her conversation, plaintiff explained to the store manager that there was "merchandise from CVS that was supposed to have been stolen" and tried "to let him know exactly what happened at CVS." Moore Dep. Tr. 124:2-13.

Following her conversation with Rite Aid, plaintiff received an Adverse Action Notice dated May 2, 2011—exactly five business days after the date of the Pre-Adverse Action Notice—stating that she had not been hired for the position. *Id.* ¶ 21. Plaintiff contends she was rejected for employment "solely as a result of her being classified 'Non-Competitive' by Rite

Aid's agent LexisNexis." Am. Compl. ¶ 62. After receiving the Adverse Action Notice, plaintiff also initiated a dispute with LexisNexis, which eventually removed her adverse record from the Esteem database. Am. Compl. ¶ 64.

Rite Aid had significant control over LexisNexis's procedures. Although LexisNexis mailed the Notices, their content was determined by Rite Aid. Shupp Dep. Tr. 104:2-19. In 2013, Rite Aid altered LexisNexis's scoring procedures to eliminate the Non-Competitive label and to require additional review of applications by Rite Aid human resources staff. Shupp Dep. Tr. 71:8-11. Likewise, in 2015, Rite Aid required LexisNexis to wait seven business days (instead of five) to mail the Adverse Action Notice following the mailing of the Pre-Adverse Action Notice. Shupp Dep. Tr. 104:2-19.

2. *Procedural History in this Action*

Plaintiff filed her first Class Action Complaint in this Court against Rite Aid and LexisNexis on March 22, 2013. The Class Action Complaint set forth one count against Rite Aid on behalf of a putative class for violation of 15 U.S.C. § 1681b(b)(3) of the FCRA, which requires that any person "using a consumer report for employment purposes" who intends to take any "adverse action based in whole or in part on the report" against an applicant for employment must provide the applicant with a copy of the report and a description in writing of the consumers rights, as prescribed in 15 U.S.C. § 1681g(c)(3), before taking such adverse action. The Class Action Complaint also set forth four additional individual counts against LexisNexis for violations of its duties as a credit reporting agency under the FCRA.

Rite Aid filed its first Motion to Dismiss the Class Action Complaint on May 31, 2013. That Motion was granted in part and denied in part by Memorandum and Order dated July 30, 2014.

On or about October 22, 2013, during the time Rite Aid's first Motion to Dismiss was pending before the Court, plaintiff settled her claims against LexisNexis for $40,000. Confidential Settlement Agreement and Release Between LexisNexis and Plaintiff Kyra Moore, Doc. No. 57-2, exh. 28 ¶ 1(a). The settlement agreement provided that plaintiff and LexisNexis "have agreed to settle all of Plaintiff's claims or potential claims that were asserted, or could have been asserted, against [LexisNexis] in the Complaint." *Id.* at 1. It further stated that plaintiff and her successors "release and discharge" LexisNexis "from any and all claims, counterclaims, remedies, liabilities, debts, demands . . . and third party actions of any kind or nature whatsoever, whether known or unknown, matured or un-matured, foreseen or unforeseen, suspected or unsuspected, accrued or unaccrued . . . including but not limited to, all claims resulting from, or arising out of, or in any way connected to this litigation or its underlying subject matter." *Id.* ¶ 2. The settlement agreement also purported to reserve all rights against Rite Aid in this suit. *Id.* Finally, the settlement agreement stated that it "shall be deemed to be made under, and shall be interpreted in accordance with, the laws of the Commonwealth of Pennsylvania." *Id.* ¶ 10. The Court dismissed the claims against LexisNexis with prejudice by Order dated November 5, 2013.

Plaintiff filed her First Amended Class Action Complaint ("Amended Complaint"), the operative complaint in this case, on August 21, 2014, naming only Rite Aid as a defendant. The Amended Complaint alleged that "LexisNexis was acting on behalf of Rite Aid, as its agent and/or representative" and that "LexisNexis' adjudication, using Rite Aid's hiring criteria, was itself a formal adverse action taken on behalf of and therefore by Rite Aid" *prior* to the mailing of the Pre-Adverse Action Notices, in violation of 15 U.S.C. § 1681b(b)(3)(A). Am. Compl. ¶¶ 19, 26, 32. The Amended Complaint also alleged that LexisNexis uniformly mailed Adverse

Action Notices exactly five days after mailing the Pre-Adverse Action Notices, allowing recipients such as plaintiff "only one to two days at most" to respond.  Am. Compl. ¶ 37.

Count I of the Amended Complaint averred that Rite Aid violated the Pre-Adverse Action Notice requirement of 15 U.S.C. § 1681b(b)(3)(A).  Count II alleged that Rite Aid violated 15 U.S.C. § 1681b(b)(2)(A), which requires prospective employers to provide applicants with a clear and conspicuous written disclosure, in a document consisting solely of the disclosure, that the employer could obtain the applicants' background reports for employment purposes prior to obtaining and using such reports.  Am. Compl. ¶¶ 72-88.  In the Amended Complaint, plaintiff seeks statutory damages and attorneys' fees "only" under 15 U.S.C. § 1681n, which applies to willful violations of the FCRA.  Doc. No. 69 at 9; Am. Compl. § 9. Plaintiff has not included the claim under § 1681(b)(2)(A) in her Motion for Class Certification and Rite Aid has not included that claim in its Motion to Dismiss Under Fed. R. Civ. P. 12(b)(1) or, in the Alternative, for Summary Judgment.  Consequently, this Memorandum addresses only Count I of the Amended Complaint.

On September 22, 2014, Rite Aid filed a Motion to Dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6).  The Court concluded plaintiff had alleged sufficient facts to support inferences that Rite Aid had violated § 1681b(b)(3)(A) both (1) vicariously through LexisNexis's adjudication of applications before mailing Pre-Adverse Action Notices to applicants, and (2) directly by adjudicating applications and mailing the Adverse Action Notice before expiration of the five days referenced in the Pre-Adverse Action Notice.  Memorandum, Doc. No. 42 at 9, 11 [hereinafter "*Moore II*"].  The Court denied Rite Aid's Motion, with one exception—it dismissed the Amended Complaint to the extent it alleged

a willful violation of § 1681b(b)(3)(A) for LexisNexis's failure to include a copy of the VAS from CVS with the Pre-Adverse Action Notice. *Id.* at 21–22.

Plaintiff filed her Motion for Class Certification on August 2, 2016. Rite Aid filed its pending Motion to Dismiss, or in the Alternative, for Summary Judgment, on December 6, 2016. In its Motion, Rite Aid argues (1) that, under the Supreme Court's decision *Spokeo, Inc. v. Robins*, 136 S. Ct. 1546 (2016), plaintiff does not have standing to challenge Rite Aid's failure to adhere to the five days referenced in the Pre-Adverse Action Notice, because she was able to discuss her background report with Rite Aid; and (2) that plaintiff's claims against Rite Aid are premised on LexisNexis's conduct and, under Pennsylvania law, plaintiff's release of LexisNexis also released Rite Aid. Rite Aid also argues that plaintiff has been fully compensated by her settlements with LexisNexis in this litigation and as a class member in the related case *Goode v. LexisNexis Risk & Information Analytics, Inc.*, No. 11-cv-2950 (E.D. Pa.), and that the settlement agreement in *Goode* also released Rite Aid. The Court concludes that it is not necessary to reach those issues in deciding the present Motions.

Plaintiff responds (1) that she has standing because the harm she has suffered is analogous to the deprivation of statutorily mandated information, which American courts have long recognized as sufficient to confer standing, and (2) that her claims against Rite Aid are premised on Rite Aid's direct violations of the FCRA, and that—even if her claims are founded on vicarious liability—federal, not state, common law controls the scope of the settlement agreement with LexisNexis. Federal common law, plaintiff argues, will give effect to her reservation of rights against Rite Aid.

In the Motion for Class Certification, plaintiff argues she and the putative class satisfy the requirements of Federal Rule of Civil Procedure 23. Rite Aid responds that plaintiff's settlement

with LexisNexis subjects her to unique defenses and renders her an inadequate class representative. These Motions are fully briefed and ripe for decision.

## III. LEGAL STANDARD

### 1. *Motion to Dismiss, or in the alternative, Motion for Summary Judgment*

Rite Aid styles its Motion as a Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(1) or, in the Alternative, for Summary Judgment. Two types of challenges to a court's jurisdiction may be made under Rule 12(b)(1). *In re Horizon Healthcare Servs. Data Breach Litig.*, 846 F.3d 625, 632 (3d Cir. 2017). A facial attack under Rule 12(b)(1) "challenges subject matter jurisdiction without disputing the facts alleged in the complaint, and it requires the court to 'consider the allegations of the complaint as true.'" *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) (quoting *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006)). In a facial attack, the court applies the same standard as under Rule 12(b)(6). *Horizon Healthcare Servs.*, 846 F.3d at 633. In a factual attack, however, a court may "weigh and consider evidence outside the pleadings." *Davis*, 824 F.3d at 346. In a factual attack, the court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case" and "the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Id.* (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). "In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Mortensen*, 549 F.2d at 891.

The Third Circuit has "cautioned" that a factual attack under Rule 12(b)(1) must be distinguished from a motion for summary judgment or a motion to dismiss under Rule 12(b)(6). *Davis*, 824 F.3d at 348. A motion for summary judgment under Rule 56, like a motion to

dismiss under Rule 12(b)(6), "necessitates a ruling on the merits of the claim." *Mortensen*, 549

F.2d at 891. However, "[t]he standing requirement is analytically distinct from the merits of the

underlying dispute." *Davis*, 824 F.3d at 348. Consequently, in addressing a jurisdictional attack

under Rule 12(b)(1), "a district court must take care not to reach the merits of a case." *Davis*,

824 F.3d at 348. Whereas Rules 12(b)(6) and 56 provide procedural safeguards such as drawing

all reasonable inferences in favor of the nonmoving party, a factual attack under Rule 12(b)(1)

allows "the trial court [to] proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56."

*Mortensen*, 549 F.2d at 891. Consequently, granting of a motion under Rule 12(b)(1) "is

inappropriate when the jurisdictional issue and substantive issues are so intertwined that the

question of jurisdiction is dependent on the resolution of factual issues going to the merits of an

action." *Davis*, 824 F.3d at 34 (quoting *Sun Valley Gasoline, Inc. v. Ernst Enters, Inc.*, 711 F.2d

138, 139 (9th Cir. 1983)); *accord Redmon v. United States*, 934 F.2d 1151, 1155 (10th Cir. 1991)

("Rule 56 rather than Rule 12(b)(1) should be used in such instances where the jurisdictional

question is intertwined with the merits of the case." (internal quotation marks omitted)).

  This Court will treat Rite Aid's Motion as a factual attack under Rule 12(b)(1), and not as

a motion for summary judgment. The jurisdictional issues—whether plaintiff has suffered a

concrete harm and whether plaintiff has released Rite Aid for LexisNexis's conduct—are not

"intertwined" with the merits of plaintiff's case—namely, whether Rite Aid or LexisNexis's

adjudications constitute "adverse actions" under the FCRA. Further, deciding Rite Aid's Motion

requires this Court to look to materials beyond the pleadings, which is permissible under Rule

12(b)(1).

## 2. Class Certification

Plaintiff has also filed a Motion for Class Certification. Subsection (a) of Federal Rule of Civil Procedure 23 sets out four prerequisites for a class action. The Rule 23(a) requirements are numerosity, commonality, typicality, and adequacy. Subsection (b) provides additional requirements for each type of class action. To obtain certification under Rule 23(b)(3), as plaintiffs seek to do in this case, the moving party must also show "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). These requirements are known, respectively, as predominance and superiority.

A district court must conduct a "rigorous analysis" in deciding whether to certify a class. *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 309 (3d Cir. 2008). "[T]he decision to certify a class calls for findings by the court, not merely a 'threshold showing' by a party, that each requirement of Rule 23 is met." *Id.* at 307. "Factual determinations supporting Rule 23 findings must be made by a preponderance of the evidence." *Id.*

Moreover, "the court must resolve all factual or legal disputes relevant to class certification, even if they overlap with the merits—including disputes touching on elements of the cause of action." *Id.* at 307. However, "there is no 'claims' or 'merits' litmus test incorporated into the predominance inquiry beyond what is necessary to determine preliminarily whether certain elements will necessitate individual or common proof." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 305 (3d Cir. 2011). "[A] district court may inquire into the merits of the claims presented in order to determine whether the requirements of Rule 23 are met, but not in order to determine whether the individual elements of each claim are satisfied." *Id.*

## IV.    DISCUSSION

The parties spend a great deal of the briefing arguing whether the facts better support a theory of direct or vicarious liability.  The record shows that the Pre-Adverse Action Notices directed applicants to contact Rite Aid with mitigating information, and Rite Aid was directly responsible for assessing this information.  Rite Aid also controlled both the content and timing of the Pre-Adverse Action and Adverse Action Notices.  In turn, Rite Aid's agent, LexisNexis, was responsible for conducting background checks, maintaining the Esteem database, and adjudicating applications for employment.  Thus, this Court will consider plaintiff's standing to challenge both Rite Aid's direct conduct and the conduct of its agent, LexisNexis.  After considering the record, the Court determines that (1) plaintiff has not suffered a concrete harm resulting from Rite Aid's direct conduct—mailing the Adverse Action Notice before the expiration of the five days referenced in the Pre-Adverse Action Notice—and (2) has released Rite Aid for the conduct of its agent, LexisNexis.  Consequently, the Court grants Rite Aid's Motion to Dismiss and denies plaintiff's Motion for Class Certification as moot.

### A.  Plaintiff Has Not Suffered a Concrete Harm Resulting from Rite Aid's Mailing of the Adverse Action Notice Before Expiration of Five Days Referenced in Pre-Adverse Action Notice

In her Amended Complaint, plaintiff alleges that Rite Aid took a final adverse action on her application for employment before the five day period provided in the Pre-Adverse Action Notice had run.  Rite Aid argues that despite its failure to wait the full five days as set forth in the Pre-Adverse Action Notice, plaintiff contacted Rite Aid within the five day period, provided additional information to support her application, and was able to take advantage of her full procedural rights under the FCRA.  Any procedural violation, Rite Aid contends, is insufficient to establish a concrete harm to confer standing under the Supreme Court's decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. at 1549.  The Court agrees and accordingly will grant Rite Aid's

Motion to Dismiss with respect to plaintiff's claim that Rite Aid violated 15 U.S.C. § 1681b(b)(3) by taking a final action on plaintiff's application before the five days referenced in the Pre-Adverse Action Notice expired.

*1. Standing Under Article III of the United States Constitution*

In order for a federal court to have jurisdiction over a claim, the plaintiff must have standing under Article III of the United States Constitution. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Standing under Article III requires that (1) the plaintiff have suffered "an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) "there must be a causal connection between the injury and the conduct complained of," i.e. "the injury must be fairly traceable to the challenged action of the defendant"; and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 560–61 (citations and quotation marks omitted). Although violation of statutorily created rights may constitute an injury in fact, a plaintiff must allege more than "a bare procedural violation, divorced from any concrete harm." *Spokeo*, 136 S. Ct. at 1549.

"The party invoking federal jurisdiction bears the burden of establishing" each element of standing "in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561. Thus, in a factual challenge under Rule 12(b)(1), "the plaintiff must prove the court has subject matter jurisdiction." *Davis*, 824 F.3d at 349.

Because standing is a "threshold question" cutting to the Court's constitutional authority to assert jurisdiction over "cases and controversies," *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 88, 103 (1998), it must be resolved prior to reaching the questions of class certification,

*In re Lord Abbett Mut. Funds Fee Litig.*, 407 F. Supp. 2d 616, 623 (D.N.J. 2005). "Ordinarily, of course, [an] Article III court must be sure of its own jurisdiction before getting to the merits." *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831 (1999). In limited cases, the Supreme Court has endorsed reaching certain questions under Rule 23 in lieu of addressing standing under Article III. *Ortiz*, 527 U.S. at 831; *Amchem Prods. v. Windsor*, 521 U.S. 591, 597 (1997). In each of these cases, however, the petitioner challenged the standing of the "vast majority" of the class. *Ortiz*, 527 U.S. at 831; *Amchem*, 521 U.S. at 597. Because the challenge in those cases was leveled at the standing of the class, as opposed to the named plaintiffs, the Court held that the standing issues existed "but for" the existence of the class. *Amchem*, 521 U.S. at 597. In each such case, the Court determined that the classes had been improperly certified and it was not necessary to reach the issue of the class members' standing. *Ortiz*, 527 U.S. at 848; *Amchem*, 521 U.S. at 628. In this case, however, Rite Aid challenges the standing of the named plaintiff, not the class; the issue of class certification is consequently not "logically antecedent," *Ortiz*, 527 U.S. at 831, to the question of standing. Thus, this Court considers standing under Article III before addressing class certification issues under Rule 23.

### 2. *Concrete Harm Under the Fair Credit Reporting Act*

Harm to a statutorily created right may be sufficient to satisfy the requirements of standing under Article III. *Spokeo*, 136 S. Ct. at 1549. As noted above, plaintiff alleges that Rite Aid has violated her rights under the Fair Credit Reporting Act by willfully violating 15 U.S.C. § 1681b(b)(3)(A) of the FCRA. The section provides:

> [I]n using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates —
>
> (i) A copy of the report; and

14

               (ii) A description in writing of the rights of the consumer under
                   [the FCRA].

In the employment context, an adverse action is defined as the "denial of employment or any other decision for employment purposes that adversely affects any current or prospective employee." 15 U.S.C. § 1681a(k)(1)(B)(ii). The notice required under § 1681b(b)(3)(A) prior to an employer taking an adverse action on an employment application is referred to as Pre-Adverse Action Notice, and its "clear purpose" is "to afford employees time to discuss reports with employers or otherwise respond before adverse action is taken." *Goode v. LexisNexis Risk & Info. Analytics Grp., Inc.*, 848 F. Supp. 2d 532, 537 (E.D. Pa. 2012) (DuBois, J.). Section 1681b(b)(3)(A) thus requires an employer to provide job applicants with their background report, summary of rights, and a "real opportunity" to contest the contents of the background report before the employer relies on the report to take an adverse action against the applicant. *Id.* at 540. "A reasonable period for the employee to respond to disputed information is not required to exceed 5 business days following the consumer's receipt of the consumer report from the employer." *Thomas v. FTS USA, LLC*, 193 F. Supp. 3d 623, 633 (E.D. Va. 2016) (quoting H.R. Rep. No. 103-486, sec. 103 (1994)).

In ruling on Rite Aid's first Motion to Dismiss the Amended Complaint in *Moore II*, this Court stated that plaintiff had sufficiently pled that Rite Aid did not allow her a reasonable time to respond to the Pre-Adverse Action Notice. *Moore v. Rite Aid Hdqtrs Corp.*, No. 13-cv-1515, 2015 U.S. Dist. LEXIS 69747, at *15-20 (E.D. Pa. May 28, 2015), Doc. No. 42 at 11. Plaintiff alleged that Rite Aid's Pre-Adverse Action Notice informed her that she had five business days from the *receipt* of the Notice to provide Rite Aid with additional information before Rite Aid took action on her application for employment. Doc. No. 42 at 11. She also alleged that Rite

Aid took final action on her application exactly five days after mailing the Notice—at most, four days after plaintiff had received it. *Id.* at 12. The Amended Complaint thus plausibly alleged that Rite Aid had failed to provide plaintiff a reasonable period to respond to the Pre-Adverse Action Notice. *Id.* (citing *Reardon v. ClosetMaid Corp.*, No. 08-1730, 2013 WL 6231606, at *13 (W.D. Pa. Dec. 2, 2013)).

With respect to the present Motion, this Court has the advantage of the development of the factual record. Importantly, the record reveals that after receiving the Pre-Adverse Action Notice sometime after April 25, 2011—and before Rite Aid made the final decision not to hire plaintiff on May 2, 2011—plaintiff contacted both Rite Aid and LexisNexis. Plaintiff testified that she contacted Rite Aid directly after receiving the Pre-Adverse Action Notice to discuss the Notice and spoke to the store manager. Moore Dep. Tr., Doc. No. 67, ex. 14 at 123:16–126:20. In her deposition, plaintiff testified that she was later told the hiring manager spoke to the district manager, but Rite Aid nonetheless ultimately decided not to hire plaintiff. *Id.* at 127:1–11. In his deposition, the store manager stated plaintiff called him "several times," that she told him "about CVS," and that he spoke to the district manager. Helms Dep. Tr., Doc. No. 67, ex. 21 at 54:9–57:7. Plaintiff does not dispute that she contacted Rite Aid after receiving the Pre-Adverse Action Notice. Pl. Resp. to Def. St. Undisputed Facts, Doc. No. 70, ¶¶ 15-19.

The FCRA protects a consumer's right to a reasonable opportunity to dispute or supplement a background report prior to an adverse action. The record in this case shows that plaintiff not only had an opportunity to exercise that right, but she did exercise it; having heard plaintiff's version of events, Rite Aid was not unreasonable in making a final employment decision prior to the expiration of the five days referenced in the Pre-Adverse Action Notice.

Consequently, plaintiff has not suffered a concrete harm to her procedural rights under the FCRA.

The Supreme Court clarified in *Spokeo* when such procedural violations constitute a concrete injury for purposes of standing under Article III. 136 S. Ct. 1540. In that case, the Court held that although an injury need not be "tangible"—i.e., economic or physical—to be "concrete," plaintiffs must demonstrate more than a "bare procedural violation." *Id.* at 1549. In determining whether a procedural injury is concrete, the Court reasoned that "both history and the judgment of Congress play important roles." *Id.* at 1549. When the evidence establishes that an intangible harm such as a procedural violation "has a close relationship" to a traditionally justiciable harm, a claimant has suffered a concrete harm. *Id.* Likewise, where Congress has identified and "elevat[ed]" an intangible harm to a legally cognizable injury through legislation, the plaintiff need not allege "any *additional* harm" beyond the procedural violation to obtain standing, but must nonetheless show that the procedural violation constitutes a "risk of real harm" to the interests Congress sought to protect. *Id.* On this issue, the *Spokeo* Court stated that dissemination of an incorrect ZIP code was not a concrete harm under the FCRA. *Id.* at 1550.

The Court of Appeals for the Third Circuit has construed *Spokeo* as a clarification of the requirements for standing, not a change in those requirements. In *In re Horizon Healthcare Services Data Breach Litigation*, 846 F.3d 625, 637–38 (3d Cir. 2017), the plaintiff challenged the unauthorized dissemination of his protected health information after two laptops containing it were stolen from defendant's headquarters. The district court granted defendant's motion to dismiss under Rule 12(b)(1) because plaintiff had not suffered concrete harm, and plaintiff appealed. *Id.* at 632. Out of respect for *stare decisis*, the Court of Appeals reasoned that "[a]lthough it is possible to read the Supreme Court's decision in *Spokeo* as creating a

requirement that a plaintiff show a statutory violation has caused a 'material risk of harm' before he can bring suit, we do not believe that the Court so intended to change the traditional standard for the establishment of standing." *Id.* Following *Spokeo*, the Third Circuit recognized the twin roles of "history and the judgment of Congress" in determining whether a procedural violation is concrete. *Id.* at 637. The Court of Appeals reasoned that the unauthorized dissemination of information had a "close relationship" with traditional privacy torts and noted that Congress had established the procedures in the FCRA to prevent exactly the sort of dissemination the plaintiff had suffered. *Id.* at 639. This showing was determined to be sufficient to establish a concrete injury giving "rise to a case or controversy where none existed before." *Id.*

District courts in the Third Circuit have interpreted *Spokeo* in the same way. In *Stokes v. Realpage, Inc.*, No. 15-cv-1520, 2016 WL 6095810, at *5 (E.D. Pa. Oct. 19, 2016), the plaintiff alleged that defendant consumer reporting agencies violated the FCRA by (1) providing erroneous background reports to prospective landlords and (2) failing to provide her with an accurate copy of those reports, preventing her from asserting her rights under the FCRA. *Id.* at *1. In analyzing whether plaintiff had suffered a concrete harm, the district court followed the standard clarified by *Spokeo*, requiring consideration of both the historic and legislative importance of the rights under the FCRA. *Id.* at *5. The law's legislative history emphasized that "the consumer has a right to know when he is being turned down for credit, insurance, or employment because of adverse information in a credit report and to correct any erroneous information in his credit file." *Id.* at *6 (quoting S. Rep. No. 91-517 at 2 (1969)). In *Stokes*, the complete failure to provide the required information or prevent the disclosure of inaccurate information not only ran afoul of rights that "Congress has long provided," but ones that were central "to the core of the interests Congress sought to protect." *Id.* at *7. This sufficed to

establish concrete injury. *Id.*; *see also Tonge v. Fundamental Labor Strategies, Inc.*, No. 16-cv-6310, 2017 U.S. Dist. LEXIS 161715, at *24 (E.D. Pa. Sep. 29, 2017) (McHugh, J.) (ruling that complete failure to provide background reports under FCRA was "closely related to long-established causes of action" for violation of traditional "substantive rights to privacy and to statutorily-mandated information").

In this case, plaintiff argues that her harm is closely related to long-established causes of action for failure to provide statutorily mandated information. Doc. No. 60 at 16; Doc. No. 69 at 19-20 (citing, *e.g.*, *Federal Election Comm'n v. Akins*, 524 U.S. 11, 20–25 (1998); *Public Citizen v. Dep't of Justice*, 491 U.S. 440, 449 (1989)). Plaintiff contends that Rite Aid's mailing of the Adverse Action Notice before the expiration of the five days referenced in the Pre-Adverse Action Notice constituted a "well-founded informational injury." Doc. No. 69 at 20–21; *accord* Doc. No. 60 at 16. According to plaintiff, this informational injury deprived her of the traditional right to "be confronted with the charges against [her] and tell [her] side of the story." Doc. No. 60 at 15 (quoting *Thomas v. FTS USA*, LLC, 193 F. Supp. 3d 623, 634, 638 (E.D. Va. 2016) (quoting Senate Report at 3)).

Plaintiff's argument is misplaced. The harm suffered by plaintiff in this case does not have a "close relationship" to traditional causes of action for deprivation of statutorily mandated information. Unlike in *Horizon Healthcare Services* and *Stokes*, plaintiff in this case received the information required by § 1681b(b)(3) and was not deprived of access to her background report. She not only received the Pre-Adverse Action Notice but was able to use it to contact Rite Aid and present her version of events. The alleged harm in this case consequently was nothing more than a "bare procedural violation." *Spokeo*, 136 S.Ct. at 1550. As the Supreme

Court pointed out in *Spokeo*, not all "informational" injuries are concrete, and simply labeling the injury "informational" does not suffice. *Id.* at 1550.

Likewise, Congress has not elevated this harm by statute to a concrete injury. The courts in both *Horizon Healthcare Services* and *Stokes* recognized that Congress passed the FCRA to allow consumers to obtain key information in their background reports and to contest its accuracy. *Horizon Healthcare*, 846 F.3d at 637; *Stokes*, No. 15-cv-1520, 2016 WL 6095810, at *7. The harms suffered in both of those cases prevented the plaintiffs from exercising their statutory rights. In the case, however, plaintiff received the Pre-Adverse Action Notice and was able to contact Rite Aid to discuss her termination at CVS and seek reconsideration of her application. Plaintiff's rights guaranteed by the FCRA were not harmed by Rite Aid's conduct, and, consequently, her harm was not the type elevated by Congress to the status of a concrete injury through the FCRA.

## B. Plaintiff Has Released Rite Aid for Failure to Provide the Pre-Adverse Action Notice Prior to LexisNexis's Adjudication of Plaintiff's Application

The Court now turns to plaintiff's second theory of liability—that Rite Aid may be held liable under § 1681b(b)(3)(A) for the conduct of its agent, LexisNexis, in its adjudication of applications prior to mailing the Pre-Adverse Action Notices. Rite Aid argues that, under Pennsylvania law, plaintiff's settlement with LexisNexis released Rite Aid by operation of law. Plaintiff responds that the scope of the settlement with LexisNexis is determined not by state law, but by federal common law, and that federal common law gives effect to the reservation of rights against Rite Aid. This Court concludes that Pennsylvania state law is controlling, plaintiff has released Rite Aid through the release of its agent, LexisNexis, and thus, plaintiff has not suffered a concrete harm caused by LexisNexis for which Rite Aid is responsible.

##### 1. *State Law Applies to This Case*

As noted above, plaintiff argues that the settlement agreement with LexisNexis should be construed under federal common law. It is well established that the construction of contracts, including settlement agreements, is a matter of state, not federal, law. *DIRECTV, Inc. v. Imburgia*, 136 S. Ct. 463, 468 (2015); *Volt Info. Scis. v. Bd. of Trs.*, 489 U.S. 468, 474 (1989); *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017). Consequently, "the interpretation of forum selection clauses in commercial contracts is not an area of law that ordinarily requires federal courts to create substantive law." *General Engineering Corp. v. Martin Marietta Alumina, Inc.*, 783 F.2d 352, 357 (1982). Thus, state law applies in construing the choice of law issue applicable to plaintiff's settlement with LexisNexis.

Against this authority, plaintiff argues that "as a matter of federal common law, the proper legal standard for analyzing the continued viability of a federal statutory claim against one alleged wrongdoer when a co-wrongdoer has been released is the intent of the settling parties." Doc. No. 69-1 at 2. In support of its argument, plaintiff cites *Zenith Radio v. Hazeltine Research*, 401 U.S. 321 (1971). In *Zenith*, the Supreme Court adopted a rule for the release of joint tortfeasors that gives effect to the intent of the parties for antitrust suits. *Id.* at 346. The Supreme Court had previously adopted that rule for patent infringement suits and it held that there was "no reason to follow a different rule in antitrust litigation." *Id.* (citing *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476 (1964)). Relying on *Zenith*, plaintiff in this case contends, "It is difficult to imagine why a different rule should apply to FCRA claims."

This Court rejects plaintiff's argument. "Only rarely will federal common law displace state law in a suit between private parties." *Martin Marietta Alumina, Inc.*, 783 F.2d at 356. The "guiding principle" in displacing state law is that there must be some "significant conflict

between some federal policy or interest and the use of state law," which must be "specifically shown." *Wallis v. Pan Am. Petroleum Corp.*, 384 U.S. 63, 68 (1966). Conflict with federal policies cannot be shown by the mere presence of a federal statute. *Atherton v. FDIC*, 519 U.S. 213, 218 (1997). "Even where there is related federal legislation an area . . . it must be remembered that 'Congress acts . . . against the background of the total corpus juris of the states." *Wallis*, 384 U.S. at 68 (internal citation omitted). In its decisions since *Zenith*, the Supreme Court has regularly applied state law to federal statutory claims. *E.g., Atherton*, 519 U.S. at 218 (applying state law to the Federal Deposit Insurance Corp.); *United States v. Kimbell Foods*, 440 U.S. 715, 723 (1979) (applying state law to loans under the Small Business Administration); *Wallis*, 384 U.S. at 69 (applying state law to leases under the Mineral Leasing Act of 1920). Plaintiff in this case has not shown a significant conflict between the federal policies embodied in the FCRA and the application of state contract law.

Moreover, despite plaintiff's contentions, *Zenith* does not hold that federal common law governs the release of an agent under all federal statutory causes of action. *Cf. Three Rivers Motors Co. v. Ford Motor Co.*, 522 F.2d 885, 891 (3d Cir. 1975) (holding that *Zenith* did not compel application of federal common law to the release in an antitrust suit). As a primary matter, *Zenith* addressed only the release of a "joint tortfeasor," 401 U.S. at 346, *not* the vicarious liability of a principal following the release of its agent. *Cf.* Restatement (Third) of Torts: Apportionment of Liability, § 13 cmt. c (2000) (distinguishing vicarious liability and joint and several liability); *Martin v. United States*, 984 F.2d 1033, 1040 (9th Cir. 1993). Further, certain areas of law, including antitrust, are distinctly federal and imply authorization to adopt federal common law. *Nat'l Soc'y of Prof'l Eng'rs v. United States*, 435 U.S. 679, 688 (1978) ("The legislative history [of the Sherman Act] makes it perfectly clear that it expected the courts

to give shape to the statute's broad mandate by drawing on common-law tradition.").  Plaintiff has not shown why the FCRA should be read to have given courts a similarly "broad mandate" to displace state law in favor of federal common law in this case.  Consequently, state law will govern construction of the settlement agreement with LexisNexis.

### 2.  *Applicable State Law*

The Court now determines which state's law is to be applied in construing the settlement agreement with LexisNexis.  As detailed above, the construction of the settlement agreement is ultimately a matter of state law; nonetheless, in cases where jurisdiction is premised on a federal question, a federal court applies a federal common law choice of law rule to determine which jurisdiction's substantive law should apply.[1]  *Gluck v. Unisys Corp.*, 960 F.2d 1168, 1179 n.8 (3d Cir. 1992); *Wells Fargo Asia, Ltd. v. Citibank, N.A.*, 936 F.2d 723, 726 (2d Cir. 1991); *Edelmann v. Chase Manhattan Bank, N.A.*, 861 F.2d 1291, 1294 (1st Cir. 1988).  In construing a contract with a choice of law provision, federal courts have turned to Section 187 of the Restatement (Second) of Conflict of Laws (the "Restatement"), which provides that choice of law provisions will be enforced unless "unreasonable."  *Pfizer Inc. v. Elan Pharm. Research Corp.*, 812 F. Supp. 1352, 1360 (D. Del. 1993) (citing Restatement (Second) of Conflict of Laws, § 187 (2nd 1988)).  As noted above, the settlement agreement with LexisNexis provides for the application of Pennsylvania law.  Thus, this Court will enforce the choice of law provision in the settlement agreement with LexisNexis and look to Pennsylvania law in construing the agreement.

---

[1] This is in contrast with a case under diversity jurisdiction in which the choice of law rules of the forum state are applied.  *Gluck v. Unisys Corp.*, 960 F.2d at 1179 n.8.  In a case under diversity jurisdiction, the issue of whether the forum state would enforce a choice of law provision is more relevant.  *See Martin Marietta Alumina*, 783 F.2d at 357 (applying the law of the forum state to determine the enforceability of the choice of law provision).

### 3. The Parties Concede the Existence of an Agency Relationship Between LexisNexis and Rite Aid

Before construing the settlement agreement with LexisNexis under Pennsylvania law, the Court notes that the parties concede the existence of an agency relationship between Rite Aid and LexisNexis. In the Amended Complaint, plaintiff alleges that "LexisNexis was acting on behalf of Rite Aid, as its agent and/or representative." Am. Compl. ¶ 19. Plaintiff is bound by these allegations.[2] Further, in her briefing, plaintiff also concedes, "[T]he record indisputably demonstrates[] that LexisNexis was Rite Aid's agent . . . . Rite Aid hired LexisNexis, and LexisNexis performed services for Rite Aid at its direction." Doc. No. 69 at 13. In its briefing, Rite Aid likewise concedes, "It is undisputed that LexisNexis was Rite Aid's agent for both FCRA adverse actions and FCRA mailings." Doc. No. 67 at 15. The Court thus turns to the effect of the release of Rite Aid's agent, LexisNexis.

### 4. Construction of the Release Under Pennsylvania Law

Pennsylvania has adopted Uniform Contribution Among Joint Tortfeasors Act to provide that the release of one joint tortfeasor "does not discharge the other tort-feasors unless the release so provides." 42 Pa. Cons. Stat. § 8326. An agent and its principal, however, are not joint tortfeasors "when the liability of the principal is vicarious liability and is not based upon the principal's independent actionable fault." *Mamalis v. Atlas Van Lines*, Inc., 560 A.2d 1380, 1381 (Pa. 1989). Unlike torts committed by more than one culpable torfeasor, "a claim of vicarious liability is inseparable from the claim against the agent since any cause of action is based on the acts of only one tortfeasor." *Id.* at 1383. Consequently, the release of an agent

---

[2] Plaintiff is bound by the allegations in the Amended Complaint. "[A] party is bound by what it states in its pleadings. *Soo Line R.R. v. St. Louis S.W. Ry.*, 125 F.3d 481, 483 (7th Cir. 1997); *accord Parilla v. IAP Worldwide Servs. VI, Inc.*, 368 F.3d 269, 275 (3d Cir. 2004) ("Judicial admissions are formal concessions in the pleadings, or stipulations by the party or its counsel, that are binding upon the party making them.") (quoting Keller v. United States, 58 F.3d 1194, 1198 n.8 (7th Cir. 1995)).

extinguishes any derivative claims against the principal, "regardless of any attempted reservation of rights" against the principal. *Maloney v. Valley Med. Facilities, Inc.*, 984 A.2d 478, 481 (Pa. 2009) (emphasis added) (citing *Mamalis*, 560 A.2d at 1381, 1393).

The Pennsylvania Supreme Court has held that the release of an agent also releases the principal for any claims of vicarious liability. In *Mamalis v. Atlas Van Lines*, Inc., plaintiff sued a moving company and one of its contractors after a fire in one of the contractor's moving vans destroyed plaintiff's property. 560 A.2d at 1381. During the course of litigation, plaintiff settled with the contractor and executed a release that "purported to preserve" claims against the moving company. *Id.* The moving company filed a motion for summary judgment, arguing that the release of the contractor also released it as the contractor's principal. *Id.* The trial court denied the motion, and after trial, the moving company appealed. *Id.* at 1382. The Pennsylvania Supreme Court agreed with the moving company, reasoning that a principal's vicarious liability is "inseparable from the claim against the agent since any cause of action is based on the acts of only" the agent. *Id.* at 1383. Consequently, "termination of the claim against the agent extinguishe[d] the derivative claim against the principal," regardless of the "purported" reservation of rights against the principal. *Id.* at 1381, 1383.

Under *Mamalis*, plaintiff has released LexisNexis for its conduct as Rite Aid's agent in conducting background checks on applicants for employment at Rite Aid, scoring applications, and mailing the Pre-Adverse Action and Adverse Action Notices. As noted above, the release given to LexisNexis is broad, providing that plaintiff and her successors "release and discharge" LexisNexis "from any and all claims, counterclaims, remedies, liabilities, debts, demands . . . and third party actions of any kind or nature whatsoever, whether known or unknown, matured or un-matured, foreseen or unforeseen, suspected or unsuspected, accrued or unaccrued . . . including

but not limited to, all claims resulting from, or arising out of, or in any way connected to this litigation or its underlying subject matter." Confidential Settlement Agreement and Release Between LexisNexis and Plaintiff Kyra Moore, Doc. No. 57-2, exh. 28 at 2. This language reaches not only the claims that were actually brought against LexisNexis in the first Complaint, but all claims that "could have been asserted." This includes claims for violation of 15 U.S.C. § 1681b(b)(3).

Plaintiff argues that under the Pennsylvania Supreme Court's decision in *Maloney v. Valley Med. Facilities, Inc.*, 984 A.2d 478, 485 (Pa. 2009), *Mamalis* is inapplicable to this case. Plaintiff's argument is misplaced. In *Maloney*, the Pennsylvania Supreme Court held the release of one physician and two medical practices did not release a second physician employed at one of those practices. The *Maloney* court was careful to limit its holding to the release of a principal and to distinguish the release of an agent, as governed by *Mamalis*. *Id.* at 487. Specifically, the court stated, "In the scenario entailing a plaintiff's surrender of vicarious liability claims only *and express preservation of claims against an agent*, we hold that the parties to a settlement should be afforded latitude to effectuate their express intentions." *Id.* (emphasis added). However, "the release of an agent operates to release the principal from vicarious liability claims, *regardless of any attempted reservation of rights*." *Maloney*, 984 A.2d at 481 (emphasis added) (citing *Mamalis*, 560 A.2d 1380). Indeed, the *Maloney* court recognized, "Certainly, as a matter of logic, it is hard to see how a principal could still be held vicariously liable after the release of its agent, the only real wrongdoer." *Id.* at 486 (quoting *Hill v. McDonald*, 442 A.2d 133, 138 n.5 (D.C. 1982)). Thus, the fact that the release of LexisNexis purports to reserve rights against Rite Aid, the principal, is to no effect. Doc. No. 57-2, ¶ 2. *Mamalis*, not *Maloney*,

is applicable to the purported reservation of rights against a principal and that reservation of rights is of no effect in this case.

Plaintiff also argues that *Mamalis* is inapplicable to a situation where a principal and an agent have independently harmed the plaintiff. Doc. No. 69 at 16. Plaintiff disputes that "this case is about 'adjudications by LexisNexis,' to the exclusion of adjudications made by Rite Aid." She contends that "Rite Aid retained control over the content and timing of the mailing" of the Pre-Adverse and Adverse Action Notices and may be held liable for that conduct, regardless of its agency relationship with LexisNexis. *Mamalis* itself recognizes that a principal may be held directly liable for its own conduct. 560 A.2d at 1382–83 (citing *Bausewine v. Norristown Herald, Inc.*, 351 Pa. 634, 41 A.2d 736 (1945)). However, this Court has already concluded that plaintiff did not suffer a concrete injury a result of Rite Aid's direct conduct, and consequently, plaintiff does not have standing to pursue those claims. Thus, plaintiff's contentions regarding Rite Aid's direct liability are not relevant to this issue. *See supra*. Plaintiff's remaining claims rest on the fact that Rite Aid acted through its agent, and under Pennsylvania law, where plaintiff has released the agent, she has also released the principal for that same conduct.

### C. Class Certification

In order to obtain class certification, the moving party must show that the class and named representatives satisfy the requirements of Federal Rule of Civil Procedure 23(a), namely, numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a). Certification must also satisfy the requirements of one subpart of Rule 23(b); to obtain certification under Rule 23(b)(3), as plaintiffs seek to do in this case, the moving party must show "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently

adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  As a general rule, however, plaintiffs "cannot represent a class of whom they are not a part." *Bailey v. Patterson*, 369 U.S. 31, 32–33 (1962).  "[A]s a prerequisite to certification, it must be established that the proposed class representatives have standing to pursue the claims as to which classwide relief is sought." *Wooden v. Bd. of Regents of the Univ. Sys.*, 247 F.3d 1262, 1287 (11th Cir. 2001); *accord Davis v. Thornburgh*, 903 F.2d 212, 222 (3d Cir. 1990).  Where the named plaintiff is unable to establish the requisite "case or controversy" under Article III prior to class certification, "dismissal of the action is required." *Lusardi v. Xerox Corp.*, 975 F.2d 964, 974 (3d Cir. 1992); *accord* O'Shea v. Littleton, 414 U.S. 488, 494 (1974).

Dismissal is required in this case.  As elaborated above, the named plaintiff does not have standing under Article III to bring a claim for violation of 15 U.S.C. 1681b(b)(3) against Rite Aid, either directly or vicariously through its agent.  Because standing lies at the "bedrock" of the judiciary's constitutional power, *In re McNeil Consumer Healthcare*, 877 F. Supp. 2d 254, 269 (E.D. Pa. 2012), it is a "threshold requirement" that must ordinarily be addressed before reaching class certification under Rule 23, *In re Lord Abbett Mut. Funds Fee Litig.*, 407 F. Supp. 2d 616, 623 (D.N.J. 2005).  Consequently, where, as in this case, the plaintiff does not satisfy the requirements of Article III for the claims asserted on behalf of the class, the court cannot reach class certification questions under Rule 23 and must dismiss those claims.

Two exceptions apply to the general rule that failure to satisfy the requirements of Article III prior to class certification requires the dismissal of those claims.[3]  Neither exception is

---

[3] Although both *Geraghty* and *Roper* address mootness under Article III, the concepts of mootness and standing are closely related, and where it is "evident" that the named plaintiffs lost the personal stake in the case required by Article III prior to filing for class certification, "the difference between 'standing' and 'mootness' is essentially a semantic one." *McNair v. Synapse Grp., Inc.*, 672 F.3d 213, 227 n.17 (3d Cir. 2012); *see also Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997) (quoting *Geraghty*, 445 U.S. at 397) ("Mootness has been described

applicable in this case. First, under *United States Parole Commission v. Geraghty*, 445 U.S. 388 (1980), where the named plaintiff "has a live individual claim when the district court decides the class certification issue, or, at the very least, he had a live claim when he filed for class certification," he or she retains the "the requisite personal stake" in the litigation to pursue class certification or to appeal the denial of certification. *Lusardi*, 975 F.2d at 977 (citing *Geraghty*, 445 U.S. 388); *Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 135-36 (3d Cir. 2000) ("If, on the other hand, the putative class representative's individual claim becomes moot before he moves for class certification, then any subsequent motion must be denied and the entire action dismissed."). Second, in *Deposit Guaranty National Bank v. Roper*, 445 U.S. 326, 334 (1980), the Supreme Court held that a rejected settlement offer of the full relief a plaintiff could hope to receive does not moot a plaintiff's class claims.

Plaintiff in this case cannot avail herself of the *Geraghty* exception because her lack of standing for the claims she seeks to bring on behalf of the class predates the filing of the Motion for Class Certification, dating (at the very least) to her settlement with LexisNexis. Likewise, plaintiff cannot take advantage of the *Roper* exception, because she has not rejected a settlement offer, but accepted one, releasing her claims against Rite Aid's agent. *Lusardi*, 975 F.2d at 979.

Ordinarily, dismissals for lack of standing are without prejudice to a plaintiff's right to file an amended complaint. *Goode v. City of Phila.*, 539 F.3d 311, 327 (3d Cir. 2008). Where, however, the parties have had adequate time to brief the controlling legal issues and develop the factual record, dismissal with prejudice may be warranted. *In re McNeil Consumer Healthcare*, 877 F. Supp. 2d at 277 (dismissing with prejudice after failing to adequately allege an "an injury in fact that is fairly traceable to the conduct of the defendants" in two successive complaints).

as 'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of litigation (standing) must continue throughout its existence (mootness).'")

Dismissal with prejudice is likewise warranted where amendment would be futile. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008).

In this case, named plaintiff Kyra Moore has developed the factual record over the four years of this litigation. She has likewise had multiple opportunities to refine her argument, including through the filing of the Amended Complaint, the Motion for Class Certification, and in her Response to the Motion to Dismiss, or in the Alternative, for Summary Judgment. Most importantly, it is difficult to see what further development named plaintiff might offer regarding her individual standing to bring the claims in Count I of the Amended Complaint. She cannot now plead that she was unable to contact Rite Aid to present her side of the story or that she did not settle with Rite Aid's agent, LexisNexis. Amendment would be futile with respect to named plaintiff's individual claims. Consequently, named plaintiff's individual claims under 15 U.S.C. § 1681b(b)(3) are dismissed with prejudice.

The members of the putative class, however, may not have been able to exercise their rights under the FCRA because of Rite Aid's alleged failure to adhere to the five-day notice provision in the Pre-Adverse Action Notice. Likewise, the members of the putative class may not have settled their claims against LexisNexis and thereby released Rite Aid as LexisNexis's principal. Thus, amendment of the Amended Complaint would not be futile with respect to the claims of the putative class, and those claims are dismissed without prejudice.

## V. CONCLUSION

For the foregoing reasons, Rite Aid's Motion to Dismiss, or in the Alternative, for Summary Judgment is granted to the extent it seeks dismissal of the claims under 15 U.S.C. § 1681b(b)(3) in Count I of the First Amended Class Action Complaint. Named plaintiff Kyra Moore's individual claims in Count I are dismissed with prejudice, as amendment of the

Amended Complaint would be futile with respect to her individual claims.  The claims of the putative class in Count I are dismissed without prejudice.  The Court's decision does not affect the claims of the named plaintiff or the putative class in Count II of the Amended Complaint. Rite Aid's alternative Motion for Summary Judgment is denied as moot, and plaintiff's Motion for Class Certification is denied.  An appropriate order follows.